### D. H. SNYDER v. W. Y. COMPTON.

#### No. 215.

1. **Caption of Statute—Reservation of Public Lands.**

   The caption of chapter 52, Laws Sixteenth Legislature, special session (July 14, 1879), is "An act to provide for the sale of a portion of the unappropriated public lands of the State of Texas, and the investment of the proceeds of such sale." This caption includes the creation of the reservation therein provided. To provide for the sale of a part of the public domain implies reasonably, if not necessarily, a provision that it shall not be subject to appropriation in any other manner. The act therefore does not conflict with section 35, article 3, of the Constitution, which prescribes, that "no bill * * * shall contain more than one subject, which shall be expressed in its title." The reservation was valid ............................... 377

2. **Same—Reservation—Construction of Statutes.**

   So much of the Act of January 22, 1883 (chapter 3, Laws Eighteenth Legislature), entitled, "An act to withdraw the public lands of the State of Texas from sale," as undertakes to continue the reservation of the former laws upon the same subject is not repugnant to either section 35 or section 36 of article 3 of the Constitution. The withdrawal from sale did not necessarily affect the reservation from location by certificates. The Legislature under *the title* had the power to limit the effect of the withdrawal, and to provide

that it should not have the effect of restoring the reservation to the public domain........................................................................ 378

3. **Amendment of Statutes.**

Section 36, article 3, of the Constitution, is: "No law shall be revived or amended by reference to its title, but in such case the act revived or sections amended shall be re-enacted and published at length." This does not mean that every act which amends the statutory law shall set out at length the entire law amended. It is intended to prohibit the amendment of a statute by reference to its title, and by providing that it should be amended by adhering to or striking out certain words, or by omitting certain language and inserting in lieu thereof certain other words. Nor does it prohibit the passage of a law which declares fully its provisions without reference to any other act, although its effect should be to enlarge or restrict the operation of other statutes ................................. 378

4. **Legislative Interpretation of Statute.**

The Legislature has the power to declare in the body of an act the construction which shall be put upon it. It is but a mode of expressing its intent; that intent, however expressed, is binding upon the courts. A Legislature may not construe a former law so as to give such construction a retroactive effect ........ ............. ......................................... 379

5. **Statute Construed—University Funds.**

The sole purpose of the Act of April 10, 1883 (chapter 72, Laws Eighteenth Legislature, p. 71), was to endow the University of Texas with one-half of the net proceeds of the sale of two million acres of land in the reservation, provided that quantity should remain after the payment of the debts provided for in the Act of January 22, 1883, by same Legislature. The former act must be construed in connection with the existing laws upon same subject. 379

6. **Construction of Statutes—Sale of Public Lands.**

We may say, that viewing the legislation passed at the same session in 1883 all together, it becomes apparent that the purpose of the Act of January 22nd was merely to suspend the sales, and was not to change radically the policy of the State in reference to the lands in question. Both the Act of February 23rd and that of April 10th clearly indicate that the Legislature contemplated future sales, although there was no law in force at that time which provided for such sales........................................ 380

CERTIFIED QUESTIONS from Court of Civil Appeals for Third District, in an appeal from District Court of Coke County.

*A. S. Fisher* and *Fisher & Townes*, for appellant.—We contend, that at the time of appellant's location, July 2, 1887, the land in controversy was unappropriated public domain, subject to be taken up by him by virtue of his certificate. Our reasons for denying the existence of any reservation at that time are:

1. The attempted reservation in Acts of July 14, 1879, and March 11, 1881, are unconstitutional and void, because not expressed in the titles to said acts.

2. That if any reservation was created by the Acts of 1879 and 1881, it was destroyed by the Act of January 22, 1883.

3. That this Act of January 22, 1883, is not sufficient to continue' the attempted reservation of the Acts of 1879 and 1881, if such reservation ever had legal existence.

4. That the Act of January 22, 1883, considered by itself, is not sufficient to create a reservation.

5. That if any reservation existed by virtue of the Acts of 1879 and 1881, and January 22, 1883, any or all of them, at the time the Act of April 10, 1883, went into effect, that the last named act limited said reservation to 2,000,000 acres, and as soon as that quantity of land was surveyed for the school and university, and such surveys were accepted by the State, the remainder of the public domain was open for location.

Counsel cited: State Const., art. 3, secs. 35, 36; Laws called session 1879, p. 48; Laws 1881, pp. 24, 25; Day Co. v. State, 68 Texas, 526; Stodard v. Chambers, 2 How., 284; Mills v. Stodard, 8 How., 364; Delamine v. Eurich, 15 How., 526; 23 Am. and Eng. Encyc. of Law, 229, 276.

*U. S. Hearrell*, for appellee, cited: State Const., art. 3, secs. 35, 36; Laws Special Session, July 14, 1879, p. 48; Laws March 11, 1881, p. 24; Id., January 23, 1883, p. 2; Id., March 31, 1885, p. 104; Id., March 29, 1887, p. 61; Stone v. Brown, 54 Texas, 344; Gammage v. Powell, 61 Texas, 631; Murphy v. Menard, 11 Texas, 673; Kimmell v. Wheeler, 22 Texas, 77; Sherwood v. Fleming, 25 Texas Supp., 427; Woods v. Durrett, 28 Texas, 430; Day Co. v. State, 68 Texas, 547; State v. Delesdenier, 7 Texas, 107; Neill v. Keese, 5 Texas, 33.

GAINES, CHIEF JUSTICE.—The following questions are certified for our determination by the Court of Civil Appeals of the Third Supreme Judicial District:

"1. Is so much of the Act of July 14, 1879, entitled, 'An act to provide for the sale of a portion of the unappropriated public lands of the State of Texas and the investment of the proceeds of such sale' (Laws Called Session Sixteenth Legislature, p. 48), and the Act of March 11, 1881 (Laws Seventeenth Legislature, p. 24), amendatory of the aforesaid act, as attempts to create a reservation, obnoxious to section 35, article 3, of the Constitution of the State of Texas, and therefore null and void?

"2. Is so much of the Act of January 22, 1883, entitled, 'An act to withdraw the public lands of the State of Texas from sale' (Laws Eighteenth Legislature, p. 2), as undertakes to continue the supposed reservation therein referred to, in contravention of section 35 or 36 of article 3 of our State Constitution?

"3. If the last named act is not obnoxious to said sections of the Constitution, had the Legislature the power to declare the legal effect of the repeal of the Acts of July 14, 1879, and March 11, 1881, and to

bind the courts by a declaration that the repeal of said acts should not be construed to return the land reserved by said acts to the mass of the public domain?

"4. If it be held that the Acts of July 14, 1879, March 11, 1881, and January 22, 1883, are free from constitutional objections and valid, then must they and the Act of April 10, 1883, entitled, 'An act to provide for the permanent endowment of the University of Texas,' etc. (Laws Eighteenth Legislature, p. 71), be construed in pari materia; and should the last act be given the effect of a proviso engrafted upon the previous acts, and as limiting the quantity of land reserved to two million acres?"

1. We think that the creation of a reservation in the Act of July 14, 1879, is within the purview of the title of that act, and that therefore it is not repugnant to section 35 of article 3 of our Constitution. The purpose of the law as expressed in the title is, "to provide for the sale of a portion of the unappropriated public lands of the State of Texas," etc. To provide for a sale of a part of the public domain implies reasonably, if not necessarily, a provision that it shall not be subject to appropriation in any other manner. If the act had merely declared that the public lands in certain counties should be sold and the proceeds applied one-half to the public debt and the other to the school fund, we apprehend that a reservation would have been as effectually created as if the intention to make it had been conveyed in express words. The Legislature might have provided that the lands, although set apart for sale, should be subject to location by virtue of any valid certificates at any time before sales were actually made. In fact, the act does expressly declare, that the lands set apart for sale under its provisions shall be subject to appropriation under the existing pre-emption laws of the State. But without such express provision no such right would have existed. The subject of the act as expressed in the title is broad enough to warrant the Legislature in providing that the lands should be sold, and such provision implying that they should not be disposed of or appropriated in any other manner, it also warranted it in so declaring.

In Davey v. Galveston County, 45 Texas, 291, this court, in construing section 35 of article 3 of the Constitution, which directs that a statute shall have but one subject, which shall be expressed in the title, says: "The number of cases in which the court has been called upon to consider similar objections to other laws renders it unnecessary to say little more than that this objection can not be maintained. The act embraces as we think but one leading object. All its provisions are subsidiary to and legitimately connected with, and tend to effect and enforce this main object, which is sufficiently clearly and definitely expressed in the title." Here, although the subsidiary provision is not express, it is legitimately connected with the main subject, and

tends to effect and enforce the main object of the law. "Any provision calculated to carry the declared object into effect is unobjectionable, although not specially indicated in its title." 1 Dill. Mun. Corp., 23, quoted with approval in Johnson v. Martin, 75 Texas, 33.

2. We are also of the opinion, that so much of the Act of January 22, 1883, entitled "An act to withdraw the public lands of the State of Texas from sale," as undertakes to continue the reservation of the former laws upon the same subject is repugnant neither to section 35 nor to section 36 of article 3 of the Constitution. Considered in the light of legislation upon the same subject matter enacted at the same session of the Legislature, it is evident that the purpose was not to annul the reservation, but to suspend the sale of the lands until such time as the Legislature might see fit to subject them to a similar disposition. Although the reservation was originally an incident of the provision for the sale of the lands, the repeal of the reservation was not necessarily an incident of their withdrawal. The withdrawal might be provided for without affecting the reservation from location by certificates. Hence, in our opinion the Legislature had power under the title quoted to enact a law "to limit the effect of the withdrawal, and to provide that it should not be construed to restore the lands so withdrawn to the general mass of the public domain." For these reasons, we think the entire purpose of the act was sufficiently expressed in its title.

Section 36 of article 3 of our Constitution reads as follows: "No law shall be revived or amended by reference to its title, but in such case the act revived or the section or sections amended shall be re-enacted and published at length." It is not meant by this provision that every act which amends the statutory law shall set out at length the entire law as amended. Under such a rule legislation would in many instances be impracticable. This is especially the case in this State, where the existence of the common law is due to statutory enactment. The practice which it was the purpose of the provision in question to prohibit was that of amending a statute by referring to its title, and by providing that it should be amended by adding to or striking out certain words, or by omitting certain language and inserting in lieu thereof certain other words. It was not intended to prohibit the passage of a law which declared fully its provisions without direct reference to any other act, although its effect should be to enlarge or restrict the operation of some other statutes. Similar provisions in other Constitutions have been construed not to apply to implied amendments. People v. Mahaney, 13 Mich., 481; Swartwout v. Railway, 24 Mich., 389; Lehman v. McBride, 15 Ohio St., 573; Preston v. Bennett, 8 W. Va., 74; Ins. Co. v. Taxing Dist., 8 Lea, 644; Baum v. Raphael, 57 Cal., 361. The statute in question restricts the operation of the former statutes upon the same subject, but we think can not be

deemed as an amendment of such acts within the meaning of the section quoted.

3.  We say in answer to the third question, that in passing a law the Legislature has the power to declare in the body of the act the construction which shall be put upon it.   It is but a mode of expressing its intent, and that intent, however expressed, is binding upon the courts.   A Legislature may not construe a former law so as to give such construction a retroactive operation.   Such is an invasion of the province of the courts.   Not so, however, when the act itself contains a provision declaring the mode in which it shall be construed. A notable instance of this is found in our Revised Statutes, which contain a chapter in which rules are laid down for the construction of all civil statutory enactments.   These rules have frequently been applied in this court in construing the provisions of the Revised Statutes, and have ever been regarded as binding upon the court.

In Gammage v. Powell, 61 Texas, 629, the three acts under consideration were passed upon by this court and were treated as valid laws, and it was held that a location made upon a part of the lands in 1881 was void.   The first two acts have been acted upon and recognized as constitutional by every department of the government.

4.  The act of April 10, 1883, should be construed in the light of the previous laws upon the same subject, and especially of those passed at the same session of the Legislature; but we are of the opinion that this act does not limit the reservation to two millions of acres.   Section 10 of the Act of July 14, 1879, provided that one-half of the net proceeds of the lands to be sold under its provisions should be set apart for the benefit of the permanent school fund, and that the other half should be applied to the payment of the bonded debt of the State, as the same should become due.   The disposition of the State's half of these proceeds was changed by the act of February 23, 1883.   Laws 1883, p. 15.   By that act it was still provided that one-half should go to the school fund; but it was also provided, that from the other half there should be first paid a bonded indebtedness due from the State to ·the university, and two debts due to the common school fund, also evidenced by the bonds of the State.   The act in question (that of April 10, 1883), provides merely, that after the debts provided for in the Act of February 23, 1883, had been paid from the State's half of the proceeds of the sales of the lands theretofore made or thereafter to be made, the proceeds of one-half of the remainder, not to exceed two millions of acres, should be set apart for the permanent endowment of the university, the other half of such remainder to go to the support of the common schools as provided in all the previous acts.   We think the sole purpose of this act was to endow the university with one-half of the net proceeds of the sale of two millions of acres of land in the

reservation, provided that quantity should remain after the payment of the debts provided for in the former act passed at the same session; and if not, then one-half of the proceeds of so much as should remain, and that it should not be construed to have any other effect.

We may say in conclusion, that reviewing the legislation passed at the same session in 1883 all together, it becomes apparent, we think, that the purpose of the Act of the 22nd of January was merely to suspend the sales, and was not to change radically the policy of the State in reference to the lands in question. Both the Act of February 23rd and that of April 10th clearly indicate that the Legislature contemplated future sales, although there was no law in force at that time which provided for such sales.

Delivered December 10, 1894.