# JUNE, 1932

FEDERAL CRUDE OIL COMPANY V. YOUNT-LEE OIL COMPANY.

No. 5545. Decided June 20, 1932.
(52 S. W., 2d Series, 56.)

22

*Phillips & Phillips* and *Nelson Phillips,* all of Dallas, *W. D. Gordon, E. E. Easterling* and *M. S. Duffie,* all of Beaumont, for appellant.

The provisions of the franchise tax in regard to the time for payment of delinquent franchise taxes and penalties and the revival of the permit to do business, is not mandatory.

The ruling of the attorney general's department is to this effect, and it has been the consistent practice of the department of the Secretary of State in keeping therewith for nearly twenty years.

The payment by this appellant of its delinquent franchise taxes and penalties in the amount of $10,500 and the revival of the permit by the institution of this suit is in keeping with this ruling and practice. Sutherland on Statutory Construction, Sec. 613; Smith v. Crittenden, 16 Mich., 152; Pond v. Megues, 3 Am. Dec., 131; State v. Harris, 17 Ohio St., 608; Anderson v. Mayfield, 93 Ky., 230, 19 S. W., 598; State v. Hannibal Ry. Co., 113 Mo., 297, 21 S. W., 14; Allen v. Allen, 114 Wis., 615, 91 Mo., 218; Smith v. Swain, 71 N. H., 277, 52 Atl., 857; State v. St. Paul Trust Co., 76 Minn., 423, 79 N. W., 543; State v. West Duluth Land Co., 75 Minn., 456, 78 N. W., 115; Stephens County v. Hefner, 118 Texas, 397, 16 S. W. (2d) 804; Security Company v. Panhandle National Bank, 93 Texas, 575, 57 S. W., 22; State Bank of Chicago v. Holland, 103 Texas, 266, 126 S. W., 564; Smythe Company v. Fort Worth Glass & Sand Com-

pany, 105 Texas, 8, 142 S. W., 1157; Texas Land & Mortgage Company v. Worsham, 76 Texas, 556, 13 S. W., 384.

*Beeman Strong, Orgain, Carroll & Bell* and *Ewell Strong,* all of Beaumont, *F. A. Williams,* of Galveston, and *R. L. Batts,* of Austin, for appellees.

A corporation being an artificial person existing only by virtue of the statutes has only such rights as are granted to it by law. Rio Grande R. R. Co. v. Brownsville, 45 Texas, 91; Gulf, C. & S. F. Ry. Co. v. Morris, 67 Texas, 692; Augusta v. Earle, 13 Peters, 519; Ashley v. Ryan, 153 U. S., 441; Waters-Pierce Oil Company v. Texas, 177 U. S., 28.

The right to do business is a franchine right and the right of a corporation to have its right to do business restored after same has been forfeited is entirely dependent upon some legislative grant. Western Public Service Company v. Meharg, 116 Texas, 193, 288 S. W., 141, 292 S. W., 168; 14A Corpus Juris, 246.

The law in effect in 1905 (Acts 29th Leg., p. 21), when the right to do business of the Federal Crude Oil Company was forfeited authorized that the right to do business be relieved against, if done within six months. In Favorite Oil Co. v. Jef Chaison Townsite Co., 162 S. W., 424, the court having reference to the right to revive under the provisions of that law said:

"According to the allegations of the petition the right to do business by this corporation was forfeited in 1904, and with it its right to institute any sort of action. This right might be revived, provided the franchise tax was afterwards paid, but this must be done within six months."

When the meaning of language is plain there is no room for construction. 25 Ruling Case Law, Sec. 213, p. 957; Fire Assn. v. Love, 101 Texas, 376, 108 S. W., 158; Weaver v. Robinson, 114 Texas, 272, 268 S. W., 133 (Com. App.); Moore v. Lumbermen's Reciprocal Assn., 258 S. W., 1051 (Com. App.); Dodson v. Bunton, 81 Texas, 655; Engelking v. VonWamel, 26 Texas, 469.

Departmental construction can only be looked to where the statute is ambiguous. Jones v. Marrs, 263 S. W., 571; Ramsey v. Todd, 95 Texas, 614, 69 S. W., 136; Brown v. Bonougli, 111 Texas, 281.

Assuming that the statute means all it says and forbids the courts of this state to entertain a suit such as this, is the statute constitutional?

In that at the time of the grant of the charter to the Federal Crude Oil Company in 1901, existing statutes authorized

the Secretary of State in case of nonpayment by the corporation of its franchise tax to forfeit its right to do business with the consequence that it would not have the right to sue in the courts of this state, the action of the Secretary of State in so forfeiting its right to do business and depriving it of the right to sue in the courts did not impair the obligation of a contract or deprive the corporation of its property without due process of law. State v. Enid, O. & W. Ry. Co., 108 Texas, 239, 191 S. W., 560; Bywaters v. Paris & G. N. Ry. Co., 73 Texas, 627, 11 S. W., 856; Jefferson Co. Title Guaranty Co. v. Tarver, 119 Texas, 410, 29 S. W. (2d) 318; Young v. City of Colorado, 174 S. W., 986 (writ of error denied); Ashley v. Ryan, 153 U. S., 443; Chicago, R. I. & P. Ry. Co. v. Zernicke, 183 U. S., 582; Waters-Pierce Oil Co. v. Texas, 177 U. S., 28; International & G. N. v. Anderson County, 246 U. S., 424, 38 Sup. Ct. Rep., 370; Interstate Consolidated Street Ry. Co. v. Commonwealth of Massachusetts, 207 U. S., 79; Phillips et al. v. Perue, 111 Texas, 112, 229 S. W., 849; Miller & Co. v. Goodman, 91 Texas, 42.

The prohibition against the right of a corporation to sue is not absolute, but conditioned upon the failure of the corporation to comply with a valid regulatory law of the state. The penalty of the statute could have been avoided by a compliance with the statute. Therefore, in no view can the denial of the right of a corporation to sue, as such, be considered a denial of a constitutional right, when such denial is made to depend upon the corporation's own delinquency. Diamond Glue Co. v. United States Glue Co., 187 U. S., 611; Ownsbey v. Morgan, 256 U. S., 94.

MR. JUDGE LEDDY of Commission of Appeals delivered the opinion for the court.

The Honorable Court of Civil Appeals for the Ninth Supreme Judicial District certifies for the determination of the Supreme Court two questions of law arising in the above cause, which is now pending in that Court.

It will not be necessary to quote the entire statement of the case which that Court sets forth in the certificate accompanying the questions propounded. We will briefly state from the certificate such facts as we deem essential in our discussion of the questions submitted.

The appellant, Federal Crude Oil Company, was, on April 23, 1901, duly incorporated under the laws of this State with the right to acquire land for prospecting and developing for oil.

It paid all the franchise taxes to the State of Texas in ac-

cordance with law up to the year 1905, omitting to pay the franchise tax due for that year. On July 1, 1905, the Secretary of State, because of the default in payment of the franchise tax for that year, forfeited, by a proper entry upon the records of that office, the right of appellant to do business in Texas.

It appears that appellant, in the year 1905, while it was lawfully transacting its business in this State, acquired by fee simple title, the land in controversy in this suit, and drilled a well thereon in search of oil. The well was not a producer, and appellant did no further prospecting upon said land, ceased to transact any business in Texas, and never since that time has resumed the business for which it was chartered.

On June 5, 1928, appellant applied to the Secretary of State for a revival of its right to do business in Texas, tendering to such official $10,500 in cash, the amount of its delinquent franchise taxes, with all interest, penalties and costs. This payment was accepted by the Secretary of State, who thereupon issued a certificate reciting such payment, certifying that appellant's right to do business had been revived, and that it was in good standing on the records of that office.

It is further shown that on September 5, 1913, the then Secretary of State received a ruling from the Attorney General's department construing the franchise tax act of 1913. In said opinion it was held that the provisions of said act giving corporations whose right to do business had been forfeited because of a failure to pay franchise taxes until September 1, 1913, within which to pay same, and have their right to do business revived, was not mandatory as to time of payment. It was further held that it was the duty of the Secretary of State to accept such taxes, even though tendered by a corporation after the expiration of the period provided in said law, and that upon such payment the Secretary of State was authorized to issue a certificate reviving the right of such corporation to do business in this State.

The record discloses that the Secretary of State, since said ruling of the Attorney General, has accepted payments of franchise taxes, penalties and interest, at any time when the same were tendered by corporations and has revived the right of such corporations to do business in this State, and that such has been the uniform practice in hundreds of cases, from the date of such ruling up to the time of the filing of this suit.

After appellant's right to do business had been revived in the manner aforesaid, it filed this suit against appellees in the

District Court of Jefferson County, in which it sought by action of trespass to try title to recover the land in controversy, alleging that appellee, on or about the first day of July, 1926, entered upon the land and ejected it therefrom, since which time it had withheld it from appellant.

Appellant's suit was met by a plea in abatement, interposed by appellee, which challenged its right to prosecute the suit upon two grounds:

First, because by its failure to pay the franchise tax for the year 1905 within the time required by law, it was expressly denied the right to prosecute or defend any suit in the courts of this State, except to defend a suit brought by the State of Texas to forfeit its charter.

Second, that appellant's payment to the Secretary of State did not revive its right to do business or remove the ban against its use of the courts of this State because it could not by payment of such delinquent franchise taxes, after the expiration of six months from the date its right to do business was forfeited, lawfully revive such right or the right to sue in the courts.

The trial court sustained appellee's plea in abatement, the effect of which was to deny appellant the right to maintain this suit.

The Court of Civil Appeals certifies two questions arising under the above state of facts:

"(1)   Did the payment by appellant of the franchise taxes due the State, together with accumulated penalties and interest, and the acceptance thereof by said official with issuance of proper certificate of revival operate to restore appellant's right to carry on its business in this State so as to entitle it to maintain this suit?

"(2)   If the payment of such taxes was not effective for the purpodse above recited, is appellant nevertheless entitled to maintain this suit to recover the land involved because of its having acquired the same at a time when its current franchise taxes were fully paid and when it was lawfully transacting the business authorized by its charter?"

The last question submitted will be discussed first.   In order properly to dispose of this question it is necessary to review briefly the enactments of the Legislature in regard to franchise taxes levied against corporations.

By the Revised Statutes of 1895 a nominal franchise tax was imposed upon foreign and domestic corporations.   This statute contained no provision denying corporations in default

a right to sue in the courts. It was provided, however, that a corporation so defaulting should forfeit its charter. Article 5243i.

This statute was amended in 1897. By the terms of the amendment much larger franchise taxes were imposed and provision was made for the forfeiture of the right of a corporation to do business because of its failure to pay such tax, such provision reading:

"And any corporation whose charter may be thus forfeited shall be denied the right to sue; provided in any suit against such corporation on a cause of action arising before such forfeiture no affirmative relief may be granted to such defendant corporation unless its charter is revived as provided in Article 5243i." Gen. Laws of the 25th Leg., p. 141.

At the same session of the Legislature (p. 168) there was added a clause denying such defaulting corporation the right to defend any suit brought against it.

In 1907 by amendment the franchise taxes were again largely increased, and Article 5243i was expressly repealed. Section 8 of this act contained this provision:

"Any corporation whose right to do business shall be thus forfeited shall be denied the right to sue in any *other* (of the) courts of this State except in the suit to forfeit the charter of such corporation and in any suit against such corporation on a cause of action arising before such forfeiture no affirmative relief shall be granted to such corporation unless its right to do business in this State shall be revived as provided by the General Laws, 30th Legislature, p. 505."

The Act of 1897 was in force at the time appellant was incorporated, when it acquired the property in controversy, and when its right to do business was forfeited on account of its failure to pay the franchise tax for the year 1905. The Act of 1907, which subsequently became Article 7399, R. S., 1911, and later Article 7091, R. S., 1925, was in force at the time this suit was instituted, and when the trespasses were alleged to have been committed.

The grounds upon which appellant predicates its right to prosecute this suit may be summarized as follows:

1. A fair construction of Article 7091 does not deny a domestic corporation a judicial remedy as to rights acquired while lawfully doing business within this State, as said statute was designed only to deny a corporation the right to prosecute or defend in the courts in respect to property rights acquired while illegally doing business within the State.

2. By the operation of Article 1320 appellant was given by virtue of its charter the unconditional right to sue and defend its property rights in this State, and that Article 7091 was not intended to take away this broad and unconditional power to protect such lawfully acquired rights.

3. If Article 7091 be construed so as to deny appellant the right to protect in the courts its property acquired while it was lawfully transacting its business, then it is void because in contravention of Section 13 of the Bill of Rights of this State, and it also operates to deny appellant the equal protection of the law guaranteed by both the State and Federal Constitutions.

■ The insistence that the State may not, in the issuance of a corporate charter, validly condition the same so as to provide that such corporation shall forfeit its right to the use of the courts if it fails to pay its franchise or license tax due the State, may be dismissed without an extended discussion. The privilege of suing or defending actions in our courts is conferred upon a corporation by its charter and the law of its creation. Under its reserve power the State may at any time abolish a corporation's charter. Such action would of necessity result in a complete destruction of the right of a corporation, as a legal entity, to sue or defend in any of our courts. It is true that the forfeiture of a corporate charter by legislative act would not operate to destroy or forfeit the property of the corporation. Under such circumstances, the stockholders, who are the beneficial owners of such property, would be fully authorized to prosecute or defend such actions in the courts as might be necessary to protect their property rights. Fidelity Building & Loan Assn. v. Thompson (on rehearing), 51 S. W. (2d) 578. If the State by abolishing a corporate charter may destroy completely the right of a corporation as an entity to prosecute or defend an action in the courts, it logically follows that it possesses the lesser power of restricting a corporation's right to the use of our courts only so long as it discharges its obligation to the State by the payment of the required franchise taxes.

Restricting the right of corporations to sue in the courts by denying them such privilege as long as their franchise or license tax is unpaid has been a long settled policy of a number of states of the American Union. That a State may even restrict the right of a foreign corporation to sue in its courts, so long as such restriction does not operate as an undue burden upon interstate commerce, has been often affirmed by the Supreme Court of the United States. Bank of Augusta v. Earle, 13 Pet., 519; Paul v. Virginia, 8 Wall., 168; Hooper v. Calif.,

155 U. S., 648; Anglo-American Co. v. Davis Production Co., 191 U. S., 373; Sioux Remedy Co. v. Cope, 235 U. S., 197.

■ If under a proper construction of Article 7091 a corporation is denied the right to sue or defend in causes of action arising before the forfeiture of its right to do business, appellant cannot escape the fact that at the time its charter was issued by the State, such provision of the existing law was written therein. To this provision the incorporators, by the acceptance of the charter, gave their unconditional and unqualified assent and the corporation cannot now be heard to say that it is not bound thereby. The acceptance of the valuable rights thus conferred by the grace of the State bound those receiving the same to a performance of all the conditions upon which such privileges were granted.

■ We think it clear that the State has the lawful right to deny a corporation the right to sue or defend in our courts in any cause of action even though the same arose while the corporation was lawfully transacting its business within the State. Since this is true, it is necessary to decide the question as to whether under a fair consideration of all the terms of the statute it must be held that the State has in fact gone to the extent of closing its courts in all cases to corporations in default in the payment of their franchise taxes, except in the one instance where a suit is brought by the State for forfeiture of its charter.

After a careful consideration of all the provisions of this statute we cannot escape the conclusion that it is susceptible of but one construction, and that is that the inhibition against a corporation suing or defending in the courts, when its franchise tax is delinquent, applies even though the cause of action upon which it sues arose before its right to do business was forfeited for the non-payment of its franchise tax. The language "and any corporation whose right to do business shall be thus forfeited shall be denied the right to sue or defend in any of the courts of this State" is sufficiently broad and comprehensive to include causes of action arising prior to the forfeiture of the corporation's right to do business. That it was intended to cover all causes of action, regardless of the time in which they arose, is plainly revealed when we consider the exception inserted by the Legislature in the Act of 1907, and carried into the Act of 1913. This exception permitted the corporation to defend a suit brought by the State for the forfeiture of its charter. It was designed to mark definitely the limits

of that which should be excluded from the operation of the statute. It is a familiar rule of statutory interpretation that an "exception makes plain the intent that the statute should apply in all cases not excepted." Sutherland on Statutory Construction (2d Ed.), Sec. 494, p. 923; 25 R. C. L., 983; First Texas State Ins. Co. v. Smalley, 111 Texas, 68, 228 S. W., 550.

That the Legislature had in mind to prohibit a corporation delinquent in the payment of its franchise tax from suing or defending on a cause of action arising before the forfeiture of its right to do business is further made manifest by that provision which prevents such corporation from obtaining affirmative relief in any suit brought against it. It is provided: "And in any suit against such corporation *on a cause of action arising before such forfeiture,* no affirmative relief shall be granted to such corporation unless its right to do business in this State shall be revived."

This language is plain and emphatic. It discloses a clear purpose upon the part of the legislature to prevent a corporation from obtaining relief, even though the cause of action in which it is sought arose prior to the forfeiture of its right to do business. Where a corporation is sued and desires to obtain affirmative relief, it must do so by means of a cross action in which it is necessarily the plaintiff, and the plaintiff bringing the original suit occupies the position of a defendant. The Legislature could have had but one purpose in putting such a provision in this Act: to prevent the corporation from thwarting the purpose of the legislature by getting relief through means of a cross action which it was prohibited from obtaining in an independent suit in which it was a plaintiff."

It would produce an anomalous situation if we were to hold it was contemplated by the legislature that a corporation could, in a suit brought by it as plaintiff, obtain any relief to which it was entitled in respect to a cause of action arising before the forfeiture, while at the same time it would be denied exactly the same relief by way of cross action if it were sued as a defendant. We think the adoption of the clause under discussion effectively removed any doubt that might exist as to whether the legislature meant exactly what it said when it denied a corporation, delinquent in the payment of its franchise tax, the right to sue or defend in any case but the one specially excepted—a suit brought by the State for the purpose of forfeiting its charter.

Appellant did not have the right to prosecute this suit on the theory that the statute did not close the courts to it in the

prosecution of a cause of action in respect to property acquired while it was lawfully transacting business within the State. The question then arises: Did its payment of such taxes, together with accumulated penalties, and the issuance of proper certificate by the Secretary of State reviving its right to do business, entitle it to maintain this suit?

The Act of 1913 provides that a corporation whose right to do business has been forfeited for non-payment of its franchise tax "shall be permitted and authorized to pay to the Secretary of State on or before the first day of September, 1913, the aggregate amount of its franchise tax or taxes and the penalty or penalties thereon as provided by law" etc. The Act then provides that when such payment has been made the right of the corporation to do business shall be revived.

It will be observed that the Act contains no prohibitory language. It does not in express terms prohibit a corporation from paying such taxes and reviving its right to do business after September 1, 1913. Nor does the Act carried into the codification of 1925, which changed the time of payment to six months after the date a corporation's right to do business had been forfeited contain any such prohibitory language.

The Act does provide that the failure to pay the taxes by the time stipulated "shall constitute sufficient grounds for the forfeiture by the judgment of any court of competent jurisdiction of the charter of such domestic corporation" etc.

██ This statute is purely a revenue measure. Under it large sums are collected for the support of the State Government. Statutes of this nature are always liberally construed so as to effectuate the chief object and purpose of their enactment. In making provision for the collection of public revenue, ordinarily time is not of the essence of the thing sought to be accomplished. The primary purpose of such a statute is to secure the payment of the taxes therein levied. Then, too, statutes which regulate and prescribe the time in which public officers shall perform specified duties are generally regarded as directory. The rule in this regard is well stated by Mr. Sutherland in his Work on Statutory Construction (2d Ed.), Sec. 612, p. 1117:

"Provisions regulating the duties of public officers and specifying *the time* for their performance are in that regard generally directory. Though a statute directs a thing to be done at a particular time, it does not necessarily follow that it may not be done afterwards. In other words, as the cases universally hold, a statute specifying *a time* within which a *public*

*officer* is to perform an official act regarding the *rights and duties* of others is directory, unless the nature of the act to be performed, or the phraseology of the statute, is such that the designation of time must be considered as a limitation of the power of the officer."

Again this same author observes, in Section 611, p. 1114:

"Those directions which are not of the essence of the thing to be done, but which are given with a view merely to the proper, orderly and *prompt* conduct of the business, and by the failure to obey *the rights of those interested will not be prejudiced,* are not commonly to be regarded as mandatory; and if the act is performed, but not in *the time* or in the precise mode indicated, it will still be sufficient, *if that which is done accomplishes the substantial purpose of the statute.*"

In the case of William A. Eastman & Co. v. Watson, 72 Wash., 522, 130 Pac., 1144, a statute of the State of Washington provided that "no corporation shall be permitted *to commence* or maintain any suit * * * in the courts of this State without alleging and proving that it has paid its annual license fee last due."

■ Suit had been commenced while the company was in default of the payment of its license tax. The defendants contended that the statute was mandatory and by its express terms prohibited the commencement of a suit until the tax last due was paid. This contention was denied and it was held that such tax might be paid at any time before trial. In discussing the question the Court quoted with approval its holding in North Star Trading Co. v. Alaska Yukon-Pac. Expo. Co., 63 Wash., 376, 115 Pac. 855, as follows:

"The license tax is a revenue measure and the prohibiting of suits or actions on the part of corporations without alleging and providing payment of the license fee tax is intended as a measure to enforce the collection of the tax."

The same ruling was made in State ex rel Preston Mill Co. v. Howell, 67 Wash., 377, 121 Pac., 861, where the court made this observation:

"These respective acts were not primarily directed against corporations; they were revenue acts pure and simple, and the provisions directed against corporations were for the purpose of enabling the State to enforce the payment of its revenue and not leave it to the voluntary act of the corporation."

■ No sound reason can be advanced why the Legislature should desire to prevent a corporation from reviving its right

to do business by paying its delinquent tax with accumulated penalties after the time fixed in the statute if at the time payment is made the State has not availed itself of its right to bring a suit against said corporation for the purpose of forfeiting its charter. If corporations are permitted to pay their delinquent franchise taxes, with accumulated penalties, at any time and thereby obtain a revival of their right to do business, and to use the courts the chief object and purpose of the statute to obtain the payment of such taxes will be more readily accomplished. To hold that the right of such a corporation to do business may not be revived by the payment of its delinquent franchise taxes and penalties after the time fixed in the statute would operate to destroy any incentive for a corporation delinquent in the payment of this tax to discharge its obligation to the State. If by payment of the amount due the State the corporation remains in its outlawed status, but few corporations would attempt to pay the same and the State would lose a large amount of revenue. This case well illustrates the advantage of the policy of the State to permit payment of these taxes after the expiration of the time provided in the statute. This appellant paid into the state treasury more than ten thousand dollars for the evident purpose of enabling it to prosecute this suit. In all probability no part of this delinquent tax would have been paid had the corporation known that its right to do business and privilege of suing in the courts could not be lawfully restored by such payment.

To say the least of it, the absence of express language negativing the right to pay the franchise tax after the time specified rendered the statute ambiguous as to whether it was intended to be directory or mandatory as to the time of payment. The attorney general of this State, the official charged by law with the duty of advising state officers in the discharge of their official duties, construed this statute shortly after its enactment in 1913. His interpretation that the statute was directory as to the time in which payment of franchise taxes and the penalties might be received by the Secretary of State was accepted and acted upon by the official charged with the special duty of collecting these taxes. At the time appellant attempted to revive its right to do business, the Secretary of State had for a period of fifteen years accepted the payment of franchise taxes after the expiration of the time provided in the statute for their payment from hundreds of corporations. He had issued his certificates reciting that the right of such corporation to do business in this State had been revived. The State has permitted over

this long period of time the proceeds of these taxes to be paid into the state treasury. It has by various appropriation bills applied this revenue to the payment of the necessary expenses of operating the State Government. The Legislature must be presumed to have had full knowledge of the construction placed upon the Act of 1913 by the officials who were charged with the duty of enforcing this law. With such knowledge, it re-enacted this statute in the codification of 1925 in substantially the same form as it existed at the time this departmental construction was placed upon it. There was no material change made in the verbiage of the Act. No prohibitory language was placed in the statute for the purpose of stopping a practice which the Legislature is bound to have known existed upon the part of state officials of accepting the tax and reviving the right of the corporation paying the same to do business in this State after the expiration of the time designated in the statute. If the construction given this Act by the officials charged with its enforcement did not rightly interpret the legislative will, we must assume that in the re-enactment of the statute it would have amended the same and by express terms prevented the Secretary of State from longer accepting such taxes and issuing to corporations, formerly in default, certificates of revival of a right to do business after the expiration of the fixed time for payment.

Where the officers of the State Government, during a long period of years, have construed a statute of doubtful import and the same is later re-enacted by the Legislature in substantially the same form, it will be presumed that the law making body knew of the construction placed upon its language by such officers and that if it was not satisfied that its intention had been rightly interpreted it would have so changed the verbiage of the Act as to have shown clearly a contrary intention. Houston & T. C. Ry. Co. v. State of Texas, 95 Texas, 507, 521, 68 S. W., 777; Galveston, H. & S. A. Ry. Co. v. State, 81 Texas, 572, 602, 17 S. W., 67; Stephens County v. Hefner, 118 Texas, 397, 16 S. W. (2d) 804 (Com. App.).

But appellant argues that prior franchise tax acts containing similar provisions to the Act of 1913 had been construed by the courts of this State in the cases of Favorite Oil Co. v. Jeff Chaison Townsite, 162 S. W., 423 and Canadian Country Club v. Johnson, 176 S. W., 835, as prohibiting a corporation from reviving its right to do business after the date specified in the statute, and that when the Legislature re-enacted the franchise tax law in the codification of 1925 it is to be presumed

that it adopted the judicial construction thus given it rather than that of the departmental officers of this State.

We think this proposition would be sound if the cases relied upon so construed said act in a case where that question was presented to the court for decision. It is true that in each of these cases language is used by the court indicating that a proper construction of the franchise tax act prevents a corporation from reviving its right to do business by payment of such taxes after the six months period provided in the statute. A careful examination of these cases, however, reveals the fact that the question as to the right of the corporation to revive its right to do business or to use the courts after the time provided in the statute was not involved, nor was it in any way necessary to a decision of the case.

In neither of these cases did it appear from the record that the corporation had paid or attempted to pay its delinquent franchise tax in an effort to revive its right to do business or to enable it to sue or defend in the courts. In both cases suit was not brought by the corporation whose right to do business had been forfeited for non-payment of franchise tax, but by the stockholders of the corporation. It was expressly averred in the plaintiff's petition in each of these cases that the officers of the corporation had failed and refused to pay the franchise tax due the State of Texas, and that by reason thereof the suit was brought by the stockholders of the corporation to protect their interest in the corporate property. The real question presented for decision in these cases was the right of the stockholders to bring a suit to protect the corporate property when the corporations were disabled from bringing such suit by having failed to pay their franchise tax. The court properly held in these cases that since the corporations were barred from bringing the suits the stockholders, the beneficial owners of the corporate property were entitled to prosecute a suit to protect their interest in such property. For a more complete discussion of this question see Pratt-Hewit Oil Corporation v. Hewit, this day decided. 122 Texas, 38, 52 S. W. (2d) 64.

It is vigorously argued by appellees that the emergency clauses of the franchise acts of 1909, 1911 and 1913, by express language revealed a legislative purpose to prohibit a corporation in default of the payment of its franchise taxes from reviving its right to do business after the date specified in such acts. Each of these acts contained language in the emergency clause which in effect recited that corporations whose right to do business had been forfeited for non-payment of franchise taxes

would revive their right to do business if the statute should be amended so as to permit them to do so.

■ It will be noted that such recital does not have reference to the act of which it is a part. It is but the expression of an opinion of one legislature of the effect of an act of a previous one. A legislative construction of an act of another legislature is uniformly held to be entitled to little weight. Snyder v. Compton, 87 Texas, 379, 28 S. W., 1061; Ingalls v. Cole, 47 Me., 530; Bingham v. Winona Co., 8 Minn., 441; San Francisco v. Spring Valley Water Works, 48 Calif., 498.

"The Legislature has the power," says the Supreme Court of this State in Snyder v. Compton, supra, "to declare in the body of the act the construction which shall be put upon it. It is but a mode of expressing its intention, and that intention, however expressed, is binding upon the courts. *A legislature may not construe a former law so as to give such construction a retroactive operation.*"

Each legislature that enacted a franchise tax law might have expressly declared in the body of such act that a corporation should be prohibited from reviving its right to do business after the expiration of the period provided therein. It appears, however, that the Legislature did not place such a declaration in any of these franchise tax enactments. Since it did not do so, the expression of an opinion by one legislature in construing the act of a former legislature is not conclusive upon the courts as it is their province to arrive at the intention of the particular legislature which enacted each of these laws.

■ Finally, it is insisted that because of the frequent passage of laws extending the time in which such corporations could revive such right the Legislature must have intended that each of the franchise tax acts enacted by it should be mandatory as to the time in which a corporation could by payment of its franchise tax revive its right to do business. It is argued that the Legislature was doing a useless thing in passing these extension acts unless it was doing so under the belief that corporations which had not revived within the time provided by law could not lawfully do so without an extension of time. As before stated, this at most would constitute but a legislative opinion of the effect of an act of a former legislature. But we do not agree with appellee's view that the various acts extending the time in which a corporation might revive its right to do business could have served only the purpose indicated. It must be remembered that when the time for revival fixed in an existing statute had expired all corporations who had not

revived their right to do business were subject to the penalty of having their charters forfeited in proceedings brought by the State. The various extension acts relieved such corporations of this penalty and prevented forfeiture suits being brought during the period covered by the extension. The Attorney General would not have been authorized to institute a suit for forfeiture of the charter of a corporation which had not reinstated within the statutory time after an extension act giving additional time within which payment could be made had become effective. These acts served the useful purpose of preventing a large number of corporate charters from being subject to forfeiture.

It follows from what has been said that the first question certified should be answered in the affirmative and the second in the negative.

The foregoing opinion is adopted as the opinion of the Supreme Court, and ordered certified.

C. M. CURETON, Chief Justice.