

# OFFICE OF
# THE ATTORNEY GENERAL
### AUSTIN, TEXAS

PRICE DANIEL
ATTORNEY GENERAL

June 25, 1947

The Honorable Beauford H. Jester
Governor of the State of Texas
Austin, Texas                    Opinion No. V-267

Re: Constitutionality
of House Bill 543.

Dear Governor Jester:

Your statement and request for an opinion on the constitutionality of H. B. 543 are in part as follows:

"This measure is now before me for action, having been passed by the regular session of the 50th Legislature.

"It purports to amend Article 3174 of the Revised Civil Statutes of Texas, 1925. This act reads as follows:

'Article 3174. Management - Each eleemosynary institution established by law shall be managed and controlled in accordance with the provisions of this title. The general control, management and direction of the affairs, property and business of such institutions is vested in the State Board of Control.'

"In both the caption and in the body of the Act, the general statement is made 'Wherever in the laws or Statutes of the State, the State Board of Control is named in connection with the control, management and direction of the affairs of said Texas School for the Deaf, the same shall hereafter be taken to mean and to apply to the said Board of Trustees for the Texas School for the Deaf for all purposes, and said Board of Trustees for the Texas School for the Deaf shall succeed to all duties, powers and functions of the State Board of Control...'

".  .  .  .

"It is clear to me from reading House Bill
543 that it seeks to amend Article 3202-a and
3202-b of the Revised Civil Statutes of Texas,
by a general reference.

"I should like to have your opinion on how
this provision relates to Article 3, Section 36,
of the Texas Constitution.

".  .  .  .

"I shall be most grateful for your advice
on the constitutionality of the measure. . . ."

Section 2 of H. B. 543 provides as follows:

"All of the powers, duties and functions of
the State Board of Control in so far as the same
apply to the Texas School for the Deaf are here-
by transferred from said State Board of Control
to said Board of Trustees for the Texas School
for the Deaf and said Board of Trustees for the
Texas School for the Deaf shall hereby be vested
with the general control, management and direc-
tion of the affairs, property and business of
said Texas School for the Deaf, including the ap-
pointment of the Superintendent for said school.
Wherever in the laws or Statutes of the State,
the State Board of Control is named in connection
with the control, management and direction of the
affairs of said Texas School for the Deaf, the
same shall hereafter be taken to mean and to apply
to the said Board of Trustees for the Texas School
for the Deaf for all purposes and said Board of
Trustees for the Texas School for the Deaf shall
succeed to all duties, powers and functions of the
State Board of Control, provided, however, the
preparation and submission of the budget for the
Texas School for the Deaf shall be made in
accordance with the provisions of Article
688 and 689, Revised Civil Statutes, 1925,
as amended, and the purchase of all sup-
plies shall be made in accordance with Arti-
cle 634, Revised Civil Statutes, 1925, as
amended.  Provided nothing in this Act shall
be construed to in any manner effect, impair,
repeal or modify the provisions of Article
3183 or any other provision of the statutes

> providing for the support and maintenance
> of said school as an eleemosynary institu-
> tion of this State; and said school and the
> children entitled to the benefits thereof
> shall receive the same kind of support,
> maintenance and care provided in other
> eleemosynary institutions in this State."

This Section of the Act clearly transfers the powers, duties, and functions of the Board of Control, in so far as they apply to the Texas School for the Deaf,to a Board of Trustees for the Texas School for the Deaf.The Act unquestionably modifies Articles 3202-a, 3202-b, and other statutes affecting the Texas School for the Deaf. This is accomplished without re-enacting Articles 3202-a, 3202-b and the other statutes affected thereby, and presents the question of a violation of Article III, Section 36 of the Texas Constitution, which reads as follows:

> "No law shall be revived or amended
> by reference to its title; but in such
> case the act revived, or the section or
> sections amended, shall be re-enacted and
> published at length."

While no Texas cases are found applying this constitutional provision to Acts transferring duties from one officer or body to another by mere reference to the Acts setting out those duties, many decisions are to be found both in Texas and in other jurisdictions which indicate the scope of such a provision and which hold expressly or by implication that it will not be applied strictly or literally.

Illustrating this tendency, we quote from the Arkansas case of Watkins v. Eureka Springs, 4 S. W. 384, as follows:

> "It could not have been the intention of
> the framers of the constitution to put unrea-
> sonable restraints upon the power of legisla-
> tion, and thus unnecessarily embarrass the
> legislature in its work. Montgomery Ass'n.
> v. Robinson, 69 Ala. 415; Home Ins. Co. v.
> Taxing District, 4 Lea, 644. They meant on-
> ly to lay a restraint upon legislation where
> the bill was presented in such form that the
> legislator could not determine what its pro-
> visions were from an inspection of it. What

is not within the mischief is not within the
inhibition.  Every intendment is to be in-
dulged in favor of the prerogative of the
legislative branch of the government.  A doubt
of its powers to legislate inures to its ben-
efit.  The language of the provision is so
broad that a literal construction would hamper
legislation almost to the extent of prohibiting
it. . . ."

In the case of Southwestern Gas and Electric
Co. v. State, 190 S. W. (2d) 132, the Austin Court of
Civil Appeals, in dealing with an attack on a statute
under Article III, Section 36, speaking through Chief
Justice McClendon, said:

"The provision has been construed in a
number of decisions in this State, as well
as in other states having similar constitu-
tional provisions.  It is the general rule
in this as well as in other states that the
provision does not apply to legislative acts
which are complete within themselves, although
their effect may be to amend some other law.
And this rule seems to apply regardless of
whether the amendatory act specifically men-
tions the act thereby in effect amended. The
State concedes the correctness of this rule
as to cases in which there is no mention of
the amended act; but contends that where, as
here, the act amended is mentioned in the
amendatory act, there is an amendment by
reference and the provision applies.  We do
not so construe the adjudicated cases in
this state.  To the contrary we regard the
cases of Snyder v. Compton, 87 Tex. 374,
28 S. W. 106, and Quinlan v. Houston & T.C.R.
Co. 89 Tex. 356, 34 S. W. 738, as practical-
ly on all fours with the case at bar. . ."

The Supreme Court of Texas affirmed this case
in an opinion by Justice Slatton found in 193 S. W. (2d)
675, in which he said:

"It is the rule that the provision of the
Constitution invoked by the State does not ap-
ply to legislative enactments which are com-
plete within themselves, even though their ef-
fect may be to amend some other law.  The lead-

ing cases announcing this view are:  Snyder v.
Compton, 87 Tex. 374, 28 S. W. 1061, and Quinlan
v. Houston & T. C. R. Co., 89 Tex. 356, 34 S.W.
738."

39 Texas Jurisprudence, page 129, Section 66,
contains the following language:

"An existing statute or provision in the
laws of Texas may be adopted in new legisla-
tion by appropriate descriptive reference,
without the necessity of re-enacting and pub-
lishing it at length.  In this manner, even
a statute of another legislative jurisdiction
may be adopted.  A statute so adopted is known
as a 'reference statute'."

50 American Jurisprudence, 195, Section 215,
reads in part as follows:

"Statutes which refer to other statutes
and make them applicable to the subject of
the new legislation are called 'reference
statutes'.  Such a statute is not strictly
amendatory or revisory in character within
the meaning of a constitutional provision
which forbids a law to be revised, altered,
or amended by reference to its title only.
. . . ."

The question here presented is the subject of
a comprehensive annotation found in 67 A. L. R., page
564, construing the case of Quinlan v. Houston & T. C.
R. Co., 89 Tex. 356, 34 S. W. 738, cited in Southwestern
Gas and Electric Co., case, supra, and dealing with the
general question.  We quote from page 568:

"In upholding a special act which ex-
pressly extended to a named railroad all
the grants, provisions, immunities, and
privileges of a previous act (referred to
by title and date), to encourage the con-
struction of railroads by donations of
lands, and which further provided that the
charter was subject to all the provisions
of the general railroad laws, the court in
Quinlan v. Houston & T. C. R. Co., (1896)
89 Tex. 356, 34 S. W. 738, noted that the
Constitution provided that 'no law shall

be revised or amended by reference to its title; but in such case the act revised, or section amended, shall be re-enacted and published at length;' and said: 'It is quite clear that ∮ 12 . . . is in no sense a revision of the Act of 1854. It extends the operation of that act, so as to make it apply to a company to which it did not apply before. If this may be deemed an amendment, in any sense of the word, it is evident that it was not such an amendment as was contemplated by the section of the Constitution just quoted. . . . That provision, and other similar constitutional restrictions upon the form of legislation, have never, in construction, been given a rigid effect.' And it added that the meaning of the new act was as clear as if the provisions of the general law had been repeated in it."

In dealing with Acts transferring, by reference to the applicable statutes the duties of one officer or body to another, we quote from 67 A. L. R., page 569, the general rule supported by many authorities thereafter cited.

"The transfer of authority and the corresponding duties from one officer or body which has by previous enactment been entrusted with the same particular authority and duties, to a different officer or body, without at the same time making any change whatever in the nature or extent of the authority and duties themselves, forms one of the clearest of all the numerous examples of situations which have been dealt with in statutes which have been attacked as violating a constitutional requirement of the sort indicated in the preceding subdivision.

"New statutes of this particular variety, which simply transfer duties from certain officers or bodies to others, without in any way changing the duties themselves, the effect being a mere substitution of the person or persons charged with these duties, have generally been regarded as not

within the contemplation of the constitutional requirement to the effect that the existing statutory provisions must be re-enacted or set out at length, the new statutes being regarded as not strictly amendatory."

In the light of the above authorities, the probition of Article III, Section 36, is limited to acts which are not complete within themselves and the meaning of which is not understandable to the reader. House Bill 543 is a complete act although it modifies and changes existing statutes without expressly naming them all. It does, however, apprise the reader of its intent, meaning, and purpose, and merely transfers the duties from one body to another.

You are therefore respectfully advised that House Bill Number 543 is not violative of Article III, Section 36 of the Texas Constitution. The effect of this opinion is limited only to the statutes which refer to the Board of Control in its relation to the Texas School for the Deaf.

You are further advised, however, that House Bill 543 will probably raise numerous questions as to possible conflicts of authority between the Board of Trustees of the Texas School for the Deaf and the Board of Control in so far as riders on the appropriation bill (S. B. 374) are concerned. Such riders apparently were written without reference to the fact that H. B. 543 had transferred certain Board of Control duties to the Deaf School Board of Trustees. These conflicts will require considerable future interpretation of the respective duties of these Boards, but we will express no opinion thereon until such time as the question may arise.

### SUMMARY

House Bill 543, in so far as it transfers the control of the Texas School for the Deaf from the Board of Control to a Board of Trustees for the Texas School for the Deaf is not unconstitu-

tional as violating Article III, Section 36 of
the Texas Constitution.

Yours very truly

ATTORNEY GENERAL OF TEXAS

By *Robert A. Hall*

Robert A. Hall
Assistant

APPROVED

*Price Daniel*

ATTORNEY GENERAL

RAH:rt:jrb