

# Office of the Attorney General
## State of Texas

**DAN MORALES**
ATTORNEY GENERAL

April 14, 1998

Mr. Don A. Gilbert
Commissioner, Texas Department of
  Mental Health and Mental Retardation
P.O. Box 12668
Austin, Texas 78711-2668

Opinion No. DM-475

Re: Whether chapter 597 of the Health and Safety Code expired on August 31, 1997, and a related question (RQ-1030)

Dear Mr. Gilbert:

You inquire about chapter 597 of the Health and Safety Code, adopted by the legislature in 1993,[1] providing that "surrogate decision-makers" could consent to major medical or dental treatment for certain clients of a community-based ICF-MR facility.[2] Section 597.055 of the Health and Safety Code provided that chapter 597 would expire on August 31, 1997. In 1997, the legislature adopted Senate Bill 85 to amend portions of chapter 597 and repeal the expiration clause, but this bill did not become effective until September 1, 1997.[3] Although section 11 of Senate Bill 85 contains an emergency clause purporting to make the bill effective upon passage,[4] the bill passed the House of Representatives by a non-record vote, and, pursuant to article III, section 39 of the Texas Constitution,[5] it did not take effect until the ninety-first day after adjournment of the legislature, or September 1, 1997.

You are concerned that the expiration clause of chapter 597 may have taken effect, with the result that chapter 597 would no longer exist, except for the provisions set out in Senate Bill 85. Accordingly, you ask whether chapter 597 of the Health and Safety Code expired on August 31, 1997. You also ask about the effect that Senate Bill 85 has on the status of chapter 597.

---

[1]Act of May 21, 1993, 73d Leg., R.S., ch. 530, § 1, 1993 Tex. Gen. Laws 2006, 2006.

[2]"ICF-MR" is defined as "the medical assistance program serving persons with mental retardation who receive care in intermediate care facilities." Health & Safety Code § 597.001(4) (incorporating definition in Health & Safety Code § 531.002).

[3]Act of May 16, 1997, 75th Leg., R.S., ch. 450, 1997 Tex. Gen. Laws 1745, 1747.

[4]Senate Bill 85 was passed by the Legislature on May 16, 1997 and signed by the Governor on May 30, 1997. *Id.*

[5]Article III, section 39 of the Texas Constitution provides that no law, except the general appropriation act, shall take effect until ninety days after the adjournment of the session, unless in case of an emergency, which must be expressed in the act, the legislature shall otherwise provide by a two-thirds record vote of each house.

Senate Bill 85 set out the sections of Health and Safety Code, chapter 597, that it amended, but it did not set out the chapter at length. This raises an issue under article III, section 36 of the Texas Constitution, which provides that a law may not be revived without reenacting it and publishing it in full:

> No law shall be *revived* or amended by reference to its title; but in such case the act *revived*, or the section or sections amended, shall be re-enacted and published at length. [Emphasis added.]

If Senate Bill 85 attempted to "revive" a repealed or expired act, it would be invalid pursuant to this constitutional provision.[6] However, we believe that Senate Bill 85 did not attempt to revive chapter 597 of the Health and Safety Code and therefore is not invalidated by article III, section 36.[7] Our view of this question is supported by a case from another jurisdiction, *Milk Control Bd. v. Pursifull*, 36 N.E.2d 850 (Ind. 1941).

*Milk Control Board v. Pursifull* addressed the Indiana Milk Control Law, which included a provision stating that it would expire on June 30, 1941. In 1941, the Indiana General Assembly amended it and extended the expiration date to June 30, 1943. The governor approved the amendment on March 11, 1941, but the bill did not include an emergency clause and did not become effective until July 8, 1941, over a week after the expiration date. The Supreme Court of Indiana had previously held "that an act is invalid which purports to amend a statute which has been repealed, or which has been judicially declared invalid in its entirety."[8] In *Milk Control Board v. Pursifull*,

---

[6]*See Thomas v. Groebl*, 212 S.W.2d 625, 631-32 (Tex. 1948); *State Bank of Barksdale v. Cloudt*, 258 S.W. 248, 249 (Tex. Civ. App.--San Antonio 1924, no writ). Sutherland states that "all courts hold that a repealed act cannot be amended," and "[n]o court will give the attempted amendment the effect of reviving the repealed act." SUTHERLAND STAT. CONST. § 22.03 at 177-78 (5th ed.).

[7]Sutherland states as follows: "In contrast with the rule concerning amendment of repealed statutes, there is no question about the amendability of a statute which has lapsed by operation of its own terms." SUTHERLAND STAT. CONST. § 22.03 at 178 (5th ed.). Sutherland cites the following cases for this statement: *Milk Control Bd. v. Pursifull*, 36 N.E.2d 850 (Ind. 1941); *State ex rel. Dawes v. Bailey*, 42 P. 373 (Kan. 1895); *Fenolio v. Sebastian Bridge Dist.*, 200 S.W. 510 (Ark. 1917). The latter two cases involve statutes that were effective for only two years but did not include express expiration clauses.

[8]*Milk Control Bd. v. Pursifull*, 36 N.E.2d 850, 851 (Ind. 1941). At the time the Indiana Supreme Court decided *Milk Control Board v. Pursifull*, the Indiana Constitution provided that "[n]o act shall ever be revised or amended by mere reference to its title; but the act revised, or section amended, shall be set forth and published at full length." Ind. Const. art IV, § 21 (repealed November 8, 1960). The Indiana Supreme Court did not refer to the constitutional provision, but relied on a common law statement of the same rule.

however, the court emphasized that the original law was still in force when the legislature adopted the amendment:

> In the instant case the 1941 amendatory act was duly passed by both houses of the General Assembly, was signed by the presiding officers of the respective houses and on March 11, 1941, it was approved by the Governor. At that time the Milk Control Law was in force and subject to amendment by the legislature. . . . The approval of the amendatory act by the Governor on March 11, 1941, was the last necessary step in the legislative process. It was then a duly enacted law of the General Assembly. Nothing remained but the administrative acts of the Secretary of State in distributing copies of the printed acts and of the Governor declaring them effective. . . . Should the delay in performing these purely administrative acts be permitted to thwart the purpose and intention of the Legislature?[9] [Citation omitted] [Footnote added].

Accordingly, the amendment was a duly enacted law of the Indiana General Assembly prior to the June 30, 1941 expiration date. The court distinguished other cases on the ground that the original statute had already been repealed at the time the legislature adopted the amendment. "In other words, while the amendatory act was still in the legislative process of enactment there was no original law to amend."[10]

The *Milk Control Board* opinion indicates that compliance with provisions like article III, section 36 of the Texas Constitution is to be determined at the time the Legislature acts on the amendment. The purpose of section 36 is to give notice to members of the Legislature of the subject to be affected by the proposed act.[11] As a commentator on this provision has stated:

> Section 36 is primarily intended to prohibit blind amendments to existing statutes. (*Snyder v. Compton*, 87 Tex. 374, 28 S.W. 1061 (1894)). A blind amendment merely cites the statute to be amended and then proceeds to set out the amendatory language alone—for example: "Substitute '$1,000' for '$200' in the third line of Section 7."[12]

---

[9]*Milk Control Bd.*, 36 N.E.2d at 851-53.

[10]*Id.*

[11]*Ex parte Erck*, 128 S.W.2d 1174, 1175 (Tex. Crim. App. 1939).

[12]1 G. BRADEN, THE CONSTITUTION OF THE STATE OF TEXAS: AN ANNOTATED AND COMPARATIVE ANALYSIS 174 (1977).

Article III, section 36 is not given a "rigid effect," but is construed according to the spirit of its restrictions and "in the light of the evils to be suppressed."[13]

The purpose of this constitutional provision—to provide notice to the legislature—is accomplished when the legislature enacts the amendment. Since chapter 597 of the Health and Safety Code was in effect and easily accessible when the legislature amended it, the policies underlying section 36 were fully served by the usual form of amendment. No purpose of article III, section 36 is served if we defer applying it until the effective date of the amendment.

The general rule that a statute "speaks from" its effective date[14] does not apply to the construction of article III, section 36. The effective date is significant for purposes of determining when a statute affects the public, but not for evaluating notice to the legislature at the time it amended a statute.[15] For example, where two irreconcilable statutes are adopted at the same session of the legislature, we look to the last legislative action rather than the effective dates to determine which statute prevails.[16]

We believe that Senate Bill 85 complied with the requirements of article III, section 36 of the Texas Constitution. The legislature's intent in adopting this bill was to repeal Health and Safety Code section 597.055 and to make certain amendments to the text of chapter 597, Health and Safety Code, as it existed on May 16, 1997. Senate Bill 85 expressed this intent as fully for purposes of article III, section 36, as if it had set out the amended chapter 597 in its entirety. Senate Bill 85 had the effect of removing section 597.055 from chapter 597 of the Health and Safety Code and of amending various other provisions of this chapter. Accordingly, chapter 597 continues to exist as amended by Senate Bill 85 of the Seventy-fifth Legislative session.

---

[13]*Quinlan v. Houston & T.C. Ry. Co.*, 34 S.W. 738, 740 (Tex. 1896).

[14]*Missouri, K. & T. Ry. Co. of Texas v. State*, 100 S.W. 766, 767-78 (Tex. 1907); City *of Houston v. Harris County Outdoor Advertising Assoc.*, 732 S.W.2d 42, 56 (Tex. App.--Houston [14th Dist.] 1987, no writ); *Trio Indep. Sch. Dist. v. Sabinal Indep. Sch. Dist.*, 192 S.W.2d 899, 900 (Tex. Civ. App.--Waco 1946, no writ).

[15]*See Deacon v. City of Euless*, 405 S.W.2d 59, 63 (Tex. 1966) (distinguishing cases cited for rule that statute does not give notice before its effective date on ground that they dealt with private rights).

[16]Gov't Code §§ 311.025, 312.014; *Ex parte de Jesus de la O.*, 227 S.W.2d 212, 213 (Tex. Crim. App. 1950).

## S U M M A R Y

Chapter 597 of the Health and Safety Code was adopted in 1993 to provide for "surrogate decision-makers" to consent to major medical or dental treatment for certain clients of community-based ICF-MR facilities. Section 597.055 of the Health and Safety Code provided that the chapter would expire on August 31, 1997. Senate Bill 85 of the Seventy-fifth Legislature, which repealed the expiration clause and amended other portions of chapter 597, became effective on September 1, 1997.

Senate Bill 85 complied with article III, section 36 of the Texas Constitution, which provides that no law shall be revived or amended by reference to its title, but the act revived or sections amended shall be reenacted and published at length. Compliance with article III, section 36 is to be determined as of the bill's adoption by the legislature and not as of its effective date. When Senate Bill 85 was adopted on May 16, 1997, it affected an existing statute. Senate Bill 85 had the effect of removing section 597.055 from chapter 597 of the Health and Safety Code and of amending various other provisions of this chapter. Accordingly, chapter 597 continues to exist as amended by Senate Bill 85 of the Seventy-fifth Legislative session.

Yours very truly,

DAN MORALES
Attorney General of Texas

JORGE VEGA
First Assistant Attorney General

SARAH J. SHIRLEY
Chair, Opinion Committee

Prepared by Susan L. Garrison
Assistant Attorney General