

# THE ATTORNEY GENERAL
## OF TEXAS

### AUSTIN 11, TEXAS

Gerald C. Mann
~~WILL WILSON~~xx
**ATTORNEY GENERAL**

Hon. Jesse James
Acting State Treasurer
Austin, Texas

Dear Sir:

Opinion No. O-3724

Re: Authority of the State Board
of Education to purchase certain
bonds.

We are in receipt of your letter of June 20, which reads as follows:

"The State Board of Education is purchasing $500,000 of Corpus Christi Independent School District Bonds dated 6-1-41; Nos. 1/500 inclusive at $1,000 each; interest rate 2¼% on the first 50 bonds; 2-3/4% on the next 80 bonds and 3% on the remaining 370 bonds, payable semi-annually on June 1st and December 1st of each year.

"Article 2671 as amended provides that no bonds, obligations or pledges shall be purchased that bear less than 2-1/2% interest. Bonds Nos. 1/50 of the above mentioned series bear only 2¼% interest.

"We kindly request that at your very earliest convenience you give us your written opinion as to whether or not bonds Nos. 1/50 of this issue can be legally paid for out of the State Permanent School Fund."

Your question implies that the first fifty bonds, bearing interest at the rate of 2¼%, might be waived by the Board of Education and the balance of the $500,000 issue purchased under the option afforded by Article 2673 of Vernon's Annotated Civil Statutes. Briefly, the option given to the State Board of Education provides that before the bonds of any county, city, school district, or other taxing agency, are sold, bids shall be taken on the total amount desired to be sold and the best bona fide bid received shall be submitted to the State Board of Education said Board having an option of ten days within which to meet said bid, and in the event the bonds are not purchased by the Board, the issuing district, or subdivision, may then proceed to sell said bonds to the party or parties making the best bona fide bid. Such bids are made upon the basis

of bonds offered by the issuing political subdivision, and
if such offering is bid for as a block, then under the law
the Board of Education is required to meet the price offered
for the bonds as a block.  It does not have the authority to
purchase the bonds so offered under any other conditions.  In
other words, the Board is not at liberty to pass up the first
fifty bonds of the above described issue and exercise its
option as to the remaining 450 bonds.  It must take either
all or none of said offering.  This it has endeavored to do,
treating the offering as one unit of investment, namely,
$500,000, said unit bearing interest at the coupon rates of
$2\frac{1}{4}\%$ for the first fifty bonds, 2-3/4% for the next eighty
bonds, and 3% for the remainder.

For convenience in handling said debt aggregating
$500,000 has been set up in $1,000 pieces, numbered 1 to 500,
inclusive.  The debtor district is obligated to pay on said
debt an average interest of 2.90% throughout the life of the
debt.  Conversely, the State Permanent School Fund, as the
owner of the evidence of the debt, will earn on its invest-
ment an average of 2.90% per annum throughout the life of the
debt.  This brings before us the question as to whether Arti-
cle 2671 of Vernon's Annotated Civil Statutes, which reads,
in part, as follows:

"No bonds, obligations or pledges shall be
purchased that bear less than $2\frac{1}{2}\%$ interest ***"

means that the bonds themselves shall bear a coupon interest
rate of not less than $2\frac{1}{2}\%$, or does it mean that no invest-
ment by the State Board of Education shall be made which
will not return as income on the investment a minimum yield
of $2\frac{1}{2}\%$?  We think the statute was intended to provide a mini-
mum of return on the investment.  Article 2671, as amended,
is merely a section of the law enacted by the Forty-first
Legislature, Regular Session, 1929, Chapter 278, page 573,
which law was an amendment to the Acts of 1909, page 216,
and which last named Act amended the original law, Acts of
1905, page 263, governing investment of the State Permanent
School Fund.  The entire law relating to this subject must be
read together in order to arrive at the correct legislative
intent.  By reference to this law we find that the State Board
of Education is authorized to pay a premium for any bonds
authorized by law to be purchased as an investment for the
School Fund and, likewise, said Board is authorized to pur-
chase bonds at a discount (Art. 2673), and then we find this
language:

"The price paid for bonds, obligations and
pledges, shall be endorsed thereon at the time
the same are purchased."

This indicates to us that the investment shall not be determined by the denomination of the component pieces as prescribed by the issuing municipality or political subdivision, but by the sum of money laid out by the Permanent School Fund in the purchase of such evidences of debt.  It seems clear that the Legislature intended that all investments made by the Board in behalf of the Permanent School Fund should return not less than 2½% interest on funds so invested.

Manifestly, the framers of the Constitution had in mind providing some sort of fixed income for the operation of the schools of the State.  Section 5 of Article 7 of the Constitution provides, in part, as follows:

"The principal of all bonds and other funds, and the principal arising from the sale of lands hereinbefore set apart to said School Fund, shall be the Permanent School Fund, and all the interest derivable therefrom *** shall be the Available School Fund ***".

Responsive to this constitutional mandate the Legislature has endeavored to provide a minimum of income for the Available Fund, and we conclude that the language contained in Article 2671, supra, "No bonds, obligations or pledges shall be purchased that bear less than 2½% interest" is intended as the legislative direction that the Board of Education, in making investments as provided by law, shall make no investment yielding less than 2½% interest on the amount so invested.

Under date of July 23, 1937, the Honorable Joe J. Alsup, Assistant Attorney General, in an opinion addressed to the Honorable Ghent Sanderford, President, State Board of Education, reached the conclusion above set forth.  We quote, in part, from his opinion --

"We are of the opinion that the phrase 'bear less than 3% interest' means that the State Board shall realize 3% on their investment.  We do not feel that the coupon face shall evidence 3% interest.  In view of the fact that these statutes were enacted for the protection of the school funds of the State, we cannot see how we can consistently arrive at any other legislative intent."

Since the above quoted opinion was rendered, Article 2671 has been amended, lowering interest from 3% to 2½%.  In this connection we find further support for the conclusion herein reached in the emergency clause of the law amending Article 2671, which clause reads as follows:

"The fact that prevailing interest rates on
shorter maturity bonds in the case of a great
many desirable investments is less than 3%, and
the fact that under the present law the State
Board of Education is not permitted to invest
in these securities because of the fact that the
present law requires a yield of 3%, creates an
emergency ***."

It will be noted in this quotation that the Legisla-
ture has used the word "yield" which we find by reference to
Webster's International Dictionary to be a synonym of the word
"bear"; therefore, we think that the legislative intendment in
Article 2671, as above quoted, was that no bonds, obligations
or pledges, shall be purchased yielding less than 2½% interest.

Following receipt of the above quoted opinion the
State Board of Education proceeded from that day forward to
invest its funds on such a basis as would yield not less than
the minimum amount provided by statutes. In some instances
this yield was determined by the payment of a premium for bonds
so purchased, and in others it was reached through the purchase
of bonds at a discount, but according to the records of the
State Board of Education, no bonds have been purchased yielding
less than the statutory minimum. We are informed by the State
Board of Education that this has been their practice for the
years following the obtaining of the Attorney General's opin-
ion interpreting Article 2671 relative to the minimum amount
of interest that might be borne by bonds so purchased.

This practice was being followed by the Board of Edu-
cation at the time Article 2671 was amended by the Acts of the
Forty-sixth Legislature, Regular Session, 1939, and in accord-
ance with the decision of the Supreme Court in the case of
Federal Crude Oil vs. Yount-Lee Oil Company, et al., 52 S.W.
(2d) 56, such amendment by the Legislature will be presumed to
have been made with knowledge of the interpretation placed upon
Article 2671 by the Attorney General and the Board of Education.
Judge Leddy used the following language in that case:

"Where the officers of the State government during
a long period of years have construed a statute of
doubtful import, and the same is later reenacted by the
Legislature in substantially the same form, it will be
presumed that the law-making body knew of the construc-
tion placed upon its language by its officers, and that
if it was not satisfied that its intention had been
rightly interpreted, it would have so changed the verb-
iage of the Act as to have shown clearly a contrary in-
tention."

Hon. Jesse James, page 5  (O-3724)

In support of this statement Judge Leddy cited the cases of Houston and T. C. R. Co., v. State of Texas, 95 Tex. 521. 68 S. W. 777: **Galveston H.& S. A. Ry. Co., v. State, 17 S.W.** 67; Stephens County v. Hessler, 16 S.W. (2d) 804.  Therefore, the presumption being in favor of the interpretation placed upon the statute by the Attorney General and the Board of Education, we think it conclusive on this department to hold that by the amendment of 1939, the Legislature, in effect, approved the construction placed upon Article 2671 by the Attorney General and the Board of Education.

Accordingly, you are advised that in our opinion bonds numbered 1/50, inclusive, bearing interest at the face rate of $2\frac{1}{4}\%$ can be legally paid for out of State Permanent School Funds, so long as such bonds constitute a part of the entire unit of investment, namely, $500,000, and so long as the income yield on the total sum invested is not less than $2\frac{1}{2}\%$.

Trusting that the foregoing fully answers your inquiry, we are

Yours very truly

ATTORNEY GENERAL OF TEXAS

By /s/ Clarence E. Crowe
Clarence E. Crowe, Assistant

APPROVED JUL 1, 1941
/s/ Gerald C. Mann
ATTORNEY GENERAL OF TEXAS

(This opinion considered and approved in limited conference)

CEC-s:wb