

# THE ATTORNEY GENERAL
# OF TEXAS

AUSTIN 11, TEXAS

**PRICE DANIEL**
ATTORNEY GENERAL

November 24, 1950.

Hon. Robert S. Calvert
Comptroller of Public Accounts
Austin, Texas

Opinion No. V-1125

Re: Construction of Subsection 3 of
Section 2 of the Departmental
Appropriation Bill of 1949 (H.B.
322, Acts 51st Leg., R.S. 1949,
ch. 615, p. 1208).

Dear Sir:

Your request for an opinion reads, in part, as follows:

"The regular session of the Fifty-first Legislature in the General Appropriation Bill made the following appropriation to the Railroad Commission for the present year of the current biennium:

| | "For the Years Ending | |
|---|---|---|
| | Aug. 31, 1950 | Aug. 31, 1951 |
| Maintenance and Miscellaneous: | | |
| 16. Contingent expenses, sheriff and witness' fees, court costs, traveling expenses, postage, books, stationery, telegraph, telephone, files, furniture and fixtures, express charges, printings, blanks, pamphlets, tariffs, rulings and all other necessary help and expenses, including $500 per year for the joint employment with other State Commissions for a representative in interstate matters at Washington | $10,000.00 | $10,000.00 |
| Total Maintenance and Miscellaneous | $10,000.00 | $10,000.00 |

"In Section 2 of General Provisions you will find the following language:

"'(3)   Sale of Printed Matter.  Any contingent funds herein appropriated, and any funds appropriated for printing, may be used under the direction of any department for which any such appropriation is made for the publication and distribution of any notices, pamphlets, booklets rules, regulations and other matters of public interest; provided that a charge may be made and collected for such publications and notices which will reasonably reimburse funds for such actual expense, but any such pamphlets shall be furnished to another state department without charge.'

"b   Subsection 15 of Section 2 reads as follows:

"'b.   The appropriations herein provided are to be construed as the maximum sums to be appropriated to and for the several purposes named herein, and the amounts are intended to cover, and shall cover the entire cost of the respective items and the same shall not be supplemented from any other sources; provided, however, that the provisions and restrictions herein shall not apply to the State Commission for the Blind; and, except as otherwise provided, no other expenditures shall be made, nor shall any other obligations be incurred by any department of this State, provided, however, that nothing herein shall prevent any department head from paying less than the maximum amount set forth herein for any salaried position.  Unless otherwise provided by law, officers and employees traveling in the performance of their official duties shall not accept any sums of money from corporations, firms or persons being audited, examined, inspected, etc., and must receive their traveling expenses from the amounts appropriated in this Act. The Comptroller is hereby prohibited from paying the salary of any person employed by the State who violates this provision.'

"The Railroad Commission has made a charge and collected money as reimbursement to the fund for notices and publications issued by that department and has made a request of the State Treasurer to deposit the moneys collected for such publication back to the current appropriation above mentioned.

"The question has arisen in this department as to whether the funds collected are a reimbursement to the appropriation or whether it is a reimbursement to the fund and is not covered by an appropriation for current use. I shall, therefore, thank you to advise this department whether the moneys collected by the Railroad Commission for the issuance and sale of publications by that department can be deposited back to the current appropriation for the use and benefits of the Railroad Commission."

The Departmental Appropriation Bill to which you refer contains appropriations to the several State departments, boards, and commissions named therein for the current biennium beginning September 1, 1949. (H.B. 322, Acts 51st Leg., R.S. 1949, ch. 615, p. 1208.) Section 2 thereof appears under the heading "General Provisions" and contains numerous riders, including subsection 3 which you have quoted. The legislative history of this subsection reflects that it had its origin as a rider attached to the Departmental Appropriation Bill of 1933 (H.B. 167, Acts 43rd Leg., R.S. 1933, ch. 166, p. 514), reading as follows:

"It is further provided that any contingent funds herein appropriated, and any funds appropriated for printing may be used under the direction of any Department for which any such appropriation is made for the publication and distribution of any notices, pamphlets, booklets, rules, regulations and other matters of public interest; provided that a charge may be made and collected for such publications and notices, as will reasonably reimburse such funds for all actual expense  in connection therewith."

The foregoing rider has been brought forward without substantial change in its verbiage in all such appropriation bills passed by the Legislature since 1933.

Item 16, supra, contains an appropriation of $10,000 out of the General Revenue Fund in the State Treasury to the Railroad Commission for each fiscal year of the current biennium for numerous purposes, including printing and contingent expenses. Therefore, the provisions of the rider under consideration apply to this appropriation.

Your question, in substance, is whether the money collected by the Railroad Commission from the sale of its publications can be deposited in the State Treasury to the credit of its current appropriation contained in Item 16 for the use and benefit of the Railroad Commission, or must be deposited to the credit of the General Revenue Fund.

In connection with the question presented, we have been advised by the Railroad Commission of Texas as follows:

"The Railroad Commission of Texas, through its Rate Division, a part of the Main Office, continuously throughout the year issues mimeographed notices of hearings, orders establishing rates, rules and regulations, governing the transportation of passengers and property by railroad, and by motor carriers, as well as by express. These mimeographed documents, generally termed circulars, are assigned numbers, and since the beginning of the fiscal year September 1, 1935, have been furnished on a subscription basis at a charge designed to as nearly as could be estimated, represent the cost of preparing and mailing the same; and the subscriptions received therefor have each year been deposited to the contingent fund of the Main Office of the Commission, to reimburse that fund for the amount expended, in accordance with the provisions of the appropriation bill as quoted above herein. That the amount received from the sale of these circulars should properly be credited to the contingent fund of the Main Office of the Commission, as replacement of that part of said contingent fund expended therefor, has never before been questioned."

We have also been advised by your office
that ever since September 1, 1933, State departments
for which appropriations were made for printing or
contingent expenses were permitted to deposit the
money received by them from the sale of their publica-
tions in the State Treasury to the credit of their re-
spective appropriations for printing or contingent ex-
penses, and to expend the same. The validity of this
long continued practice was not questioned in your of-
fice until about the beginning of the current fiscal
year.

The Legislature did not carefully select the
language which it employed in the original rider at-
tached to the Departmental Appropriation Bill of 1933,
and in some respects its meaning or intent is uncer-
tain or doubtful. For example, we have been advised
by your office that it has at all times construed the
phrase "any contingent funds herein appropriated," which
appears in the first sentence of all such riders, to
mean "any funds herein appropriated for contingent ex-
penses," for such phrase could not be given its literal
meaning because there was no such fund as "contingent
fund" in the State Treasury. Such construction became
necessary for the purpose of giving effect to the legis-
lative intent.

The Comptroller of Public Accounts is the ex-
ecutive officer charged by law with the superintendence
and management of the fiscal concerns of the State, as
its sole accounting officer, and he must keep accounts
on all moneys received by the State. Tex. Const. Art.
IV Sec. 1, Art. 4344, V.C.S.

In view of the long-established practice of
the Comptroller with reference to the disposition of the
moneys received from the several State departments, col-
lected from the sale of their publications, we conclude
that he has at all times since September 1, 1933, until
recently, construed such riders as authority for such
practice.

The effect of such departmental construction
is determined by well-established rules adopted by the
courts for their guidance in interpreting statutes when
their meaning is uncertain or doubtful. Some of such
rules which are particularly applicable here read as fol-
lows:

"When in the course of any controversy a question as to the effect or operation of a statute is presented, it becomes the duty and it is the province of the court to construe the statutory language. This consists in ascertaining and determining the fair and proper meaning of the law, and in giving it, if possible, the effect and scope intended by the legislature.

"A statute should be construed as understood at the time of its passage. At all times subsequent to its enactment, an act should be given the same meaning that it had at that time, unless its meaning has been changed by amendment."  39 Tex. Jur. 156, Statutes, Sec. 86.

"The contemporaneous construction of an act by those who are charged with the duty of its enforcement--that is, executive and administrative officers and departments, as well as by the courts and the Legislature--is worthy of serious consideration as an aid to interpretation, particularly where such construction has been sanctioned by long acquiescence.  . . . Moreover, sound public policy requires the resolving of all doubts in favor of a contemporaneous or practical construction that has been followed with substantial uniformity."  39 Tex. Jur. 234-235, Statutes, Sec. 125.

"The courts will ordinarily adopt and uphold a construction placed upon a statute by an executive officer or department charged with its administration, if the statute is ambiguous or uncertain, and the construction given it is reasonable. In other words, the judiciary will adhere to an executive or departmental construction of an ambiguous statute unless it is clearly erroneous or unsound, or unless it will result in serious hardship or injustice, although it might have been inclined to place a different construction upon the act.

"The rule above stated is particularly applicable to an administrative construction of long standing, . . . where a law that has been uniformly construed by those charged with its enforcement

has been re-enacted without a change of language. It has been variously applied to constructions, opinions or rulings of the Governor, the Attorney General, the Comptroller, the Secretary of State, the Treasurer, the Land Commissioner, the Compensation Claim Board, and the State Department of Education." 39 Tex. Jur. 235, Statutes, Sec. 126.

"In connection with the construction of statutes, there are numerous presumptions in which a court may indulge. . . .

"A construction placed upon a statute by administrative officers is presumed to be correct, especially where it was contemporaneous, or nearly so, with the statute itself. And a legislative acquiescence in the construction given a statute may be presumed from protracted failure to amend or change it." 39 Tex. Jur. 242-243, Statutes, Sec. 129.

"The Legislature is presumed to have understood the meaning of language that it employed, and to have known the construction placed upon the same or a similar statute by the appellate courts and by the executive or administrative officers. And it may be presumed, in a proper case, that the Legislature has acquiesced in the construction of a particular act, or that if it had not been satisfied with such construction it would have changed the verbiage of the law so as to show a contrary intention." 39 Tex. Jur. 250, Statutes, Sec. 132.

These rules have been applied by the Texas courts in numerous cases. See, for example, Federal Crude Oil Co. v. Yount-Lee Oil Co., 122 Tex. 21, 52 S.W.2d 56 (1933); Shaw v. Strong, 128 Tex. 65, 96 S.W.2d 276 (1936) (concurring opinion by Chief Justice Cureton); Lockhart v. American United Life Ins. Co., 181 S.W.2d 607 (Tex. Civ. App. 1944, error ref.)

We believe this rider was attached to the respective departmental appropriation bills to enable any State department to which it applied to publish and distribute to the general public any of its notices, pamphlets, booklets, rules, regulations, and other matters of public interest

without cost to the State of Texas.  To accomplish that
purpose, the Legislature in the rider authorized such a
department to pay the expenses incurred for printing and
distributing such publications out of its current appro-
priation for printing or for contingent expenses and to
make and collect a charge therefor as would reasonably
reimburse that item of appropriation which was charged
with such expenses.  "The primary meaning of the word
'reimburse' is to pay back; to make return or restora-
tion of an equivalent for something paid, expended or
lost; to indemnify; to make whole."  36 Words and Phrases
(Perm Ed. 1940) 727.  Therefore, it was evidently contem-
plated by the Legislature that a department would charge
and collect no more money from the sale and distribution
of its publications than it expended for printing and
distributing them, thereby leaving unimpaired the entire
amount of the particular appropriation from which such
expenses were paid to be expended by the department for
the purposes designated therein.  In other words, any ap-
propriation made to a department from which expenses for
printing and distributing the publications of that depart-
ment may be paid constitutes, in effect, a "revolving fund,"
as that term is commonly understood, for such purposes,
since the only money which can be deposited to its credit
is that money received by the department from the sale of
its publications to reimburse such fund for the money tak-
en therefrom to pay such expenses.  The reimbursement pro-
vision in the rider obviated the necessity for the Legis-
lature to specifically reappropriate such money, and made
the provisions of Subsection 15(b) of Section 2 of House
Bill 322 inapplicable thereto.

In view of the foregoing, we are of the opinion
that the construction heretofore placed by your department
upon the original rider and its respective successors ap-
pearing in each successive departmental appropriation bill
passed by the Legislature since 1933 was a fair, reasonable,
and sensible interpretation thereof, and is in accord with
the legislative intent.  However, if we entertained doubt
as to the correctness of such departmental construction,
the rules for construction of statutes cited herein would
require us to confirm it, unless we could hold that such
construction was clearly erroneous or unsound, or unless
it would result in serious hardship or injustice, which we
cannot do.  Furthermore, the Legislature is not only pre-
sumed to have understood the meaning of the language which
it at all times has used in these riders, but is also pre-
sumed to have known of the construction placed upon it by

your department, and to have assented thereto; otherwise it would have changed the verbiage thereof so as to show a contrary intention.

## SUMMARY

The money received by the Railroad Commission from the sale of its publications should be deposited in the State Treasury to the credit of Item 16 of its current appropriation for contingent expenses, printing, and other purposes to reimburse that appropriation for the money withdrawn therefrom to pay the expense incurred in connection with printing and distributing such publications to the general public. Item 16, so reimbursed, may be expended by the Commission for the purposes designated therein.  H.B. 322, Acts 51st Leg., R.S. 1949, ch. 615, p. 1208, Sec. 2, Subsecs. 3 and 15(b).

APPROVED:

C. K. Richards
Trial & Appellate
Division

Everett Hutchinson
Executive Assistant

Charles D. Mathews
First Assistant

BWB:wb

Yours very truly,

PRICE DANIEL
Attorney General

*Bruce W. Bryant*

By
Bruce W. Bryant
Assistant