CLAUDE ISBELL, SECRETARY OF STATE ET AL
v. GULF UNION OIL COMPANY.

No. A-1454. Decided March 3, 1948.
Rehearing overruled April 14, 1948
Second motion for rehearing overruled May 26, 1948.
(209 S. W., 2d Series, 762.)

*Price Daniel*, Attorney General, *W. V. Geppert* and *C. K. Richards*, Assistants Attorney General, for petitioners.

It was error for the Court of Civil Appeals to hold that the five per cent revival tax should only apply to a period of not more than six months from the date of forfeiture, and in not holding that said fee should apply to the entire time from the date of forfeiture to the day of payment of all delinquent franchise tax and penalties. Texas Cent. Ry. Co. v. Hanner-Frefrichs and Co., 104 Texas 603 142 S. W. 1163; State v. Laredo Ice Co., 96 Texas 461, 73 S. W. 951; Southern Express Co. v. Walker, 92 Va. 59, 66, 22 S. E. 809.

*Cole, Patterson, Cole & McDaniel* and *Bennett B. Patterson*, all of Houston, for respondent.

A departmental construction, to the effect that the revival tax should apply for the entire period is only persuasive and not controlling and will not be enforced if serious injustice results from such construction. Mutual Lbr. Co. v. Sheppard, 173 S. W. (2d) 494; Burk-Waggoner Oil. Assn. v. Hopkins, 296 Fed. 492, affirmed in 269 U. S. 110, 70 Law Ed. 183; State v. Houston Oil Co., 194 S. W. 422.

MR. JUSTICE SHARP delivered the opinion of the Court.

This suit was brought by the Gulf Union Oil Company against the Secretary of State, the Attorney General, and the State Treasurer, to recover $476.50, demanded by and paid to Claude Isbell, as Secretary of State, under the provisions of Article 7057-b Vernon's Annotated Civil Statutes, as a prerequisite for the revival of its right to do business under Article 7092 Vernon's Annotated Civil Statutes. The case was tried before the court without a jury, and plaintiff was denied judgment. An appeal was taken to the Court of Civil Appeals, and that court reversed the judgment of the trial court and remanded the case with instructions. 205 S. W. (2d) 105.

Respondent was chartered in 1928 as a domestic corporation, ation, and paid all its franchise taxes up to the year 1936. It paid no franchise taxes thereafter, and its right to do business in Texas was forfeited by endorsement to that effect on the books of the Secretary of State on July 2, 1936. In 1946 respondent sought to revive its right to do business in Texas, and paid, under protest, the sum of $476.50, which included all taxes and penalties for the years 1936 to 1946, inclusive. This

sum included five per cent. per month upon the tax due for the year 1936 from the date of forfeiture to the date of payment, and five per cent. per month on the tax for each subsequent year from the date of delinquency to the date of payment.

Petitioner contends that the Court of Civil Appeals erred in holding that the five per cent. revival fee provided for by Article 7092 should be computed on the tax due by respondent at the date of the forfeiture of its right to do business *for a period of not to exceed six months* from the date of such forfeiture; and erred in not holding that the correct and legal computation of the five per cent. revival fee should be based upon the tax due by respondent at the date of the forfeiture of its right to do business, for the entire period from the date of forfeiture to the date of payment to the Secretary of State of all delinquent franchise taxes and penalties thereon.

The pertinent part of Article 7092 reads as follows:

"Any corporation whose right to do business may have been forfeited, as provided in this chapter, shall be relieved from such forfeiture by paying to the Secretary of State any time within six months after such forfeiture the full amount of the franchise tax and penalty due by it, together with an additional amount of five per cent of such tax for each month, or fractional part of a month, which shall elapse after such forfeiture; provided, that such amount shall in no case be less than five dollars."

We quote from the opinion of the Court of Civil Appeals the following:

"By agreed stipulation there have been three different 'executive or departmental constructions' of the 5% per month provision, as follows:

"1. Up to the year 1924, the 5% was computed only upon the tax due at the time of the forfeiture for a period of not exceeding six months from the date of forfeiture.

"2. For the period 1924 to 1933, both inclusive, the computation was only upon the tax due at the date of forfeiture but for the entire period from date of forfeiture to date of payment.

"3. From 1934 on, in addition to the amount under computation 2 above, there was added 5% per month upon the taxes for subsequent years from the respective dates of delinquency to date of payment.

"The sum paid under protest was based on computation 3. The Gulf contends for computation 1, or, in the alternative, for computation 2. We have reached the conclusion that computation 1 should be applied."

The Court of Civil Appeals then proceeds to give its reasons for holding that computation No. 1 was the correct basis for the payment of the revival fee provided for in Article 7092. Those reasons will not be repeated here. The controlling question presented is: Does Article 7092 authorize the Secretary of State to collect from a corportation, whose right to do business has been forfeited, the full amount of the franchise tax and penalties due by it, together with an additional five per cent. for each month, or fractional part of a month, for the entire period from the date of forfeiture until the accrued taxes and penalties are paid?

Article 7084 et seq., of Chapter 3, prescribe the franchise taxes to be paid by corporations doing business in this State. Article 7084 provides: "Except as herein provided, every domestic and foreign corporation heretofore or hereafter chartered or authorized to do business in Texas, shall, on or before May 1st of each year, pay in advance to the Secretary of State a franchise tax for the year following, * * *." Then follows the basis upon which the tax is calculated.

Article 7089, as amended in 1931, provides: "All corporations now required to pay an annual franchise tax shall, between January 1st and March 15th of each year, make a sworn report to the Secretary of State, on blanks furnished by that officer, showing the condition of such corporation on the last day of its preceding fiscal year." This article also provides what the reports shall contain, and further provides: "Any corporation which shall fail or refuse to make its report shall be assessed a penalty of ten per cent (10%) of the amount of franchise tax due by such corporation, payable to the Secretary of State, together with its franchise tax."

Article 7091 in effect provides that any corporation which fails to pay such franchise tax shall thereupon become liable to a penalty of 25% of the amount of such franchise tax due by such corporation. If the amount of such tax and penalty is not paid in full on or before the first day of July thereafter, such corporation for such default shall forfeit its right to do business in this State. Such Article also provides that such forfeiture shall be consummated without judicial ascertainment by the

Secretary of State entering upon the margin of the record kept in his office relating to such corporation the words "right to do business forfeited" and the date of such forfeiture. Any corporation whose right to do business shall thus be forfeited shall be denied the right to sue or defend in any court of the State, except in a suit to forfeit its charter.

Article 7092 provides how the notice of such forfeiture shall be given by the Secretary of State, and the time and manner of giving such notice. It also provides that when such tax and penalty shall have been fully paid to the Secretary of State, he shall revive the right of the corporation to do business within this State by canceling the words "right to do business forfeited" upon his record, and by endorsing thereon the word "revived" and the date of such revival. This Article also contains the provision above quoted. This Article further provides that if any domestic corporation whose right to do business within this State shall hereafter be forfeited under the provisions of this law, and shall fail to pay the Secretary of State on or before the first day of January next following the revival the amounts necessary to entitle it to have its right to do business revived under the provisions of this law, such failure shall constitute sufficient ground for the forfeiture of its charter by judgment of any court of competent jurisdiction.

This Court has held that the foregoing articles were enacted purely for revenue purposes. Federal Crude Oil Co. v. Yount-Lee Oil Co., 122 Texas 21, 52 S. W. (2d) 56; Ross Amigos Oil Co. v. The State, 134 Texas 626, 138 S. W. (2d) 798. In Federal Crude Oil Co. v. Yount-Lee Oil Co., supra, it was said:

"This statute is purely a revenue measure. Under it large sums are collected for the support of the State Government. Statutes of this nature are always liberally construed so as to effectuate the chief object and purpose of their enactment."

The respondent had a right to do business after the Secretary of State entered on the records kept in his office relating to corporations the words "right to do business forfeited," as provided for in Article 7091. The only right or privilege taken away from respondent by this act of the Secretary of State was its right to sue and defend in the courts of this State. It is liable for the franchise tax due each year, and this liability continues so long as the corporation remains undissolved, or until its charter is forfeited by legal proceedings. Ross Amigos Oil Co. v. The State, 134 Texas 626, 138 S. W. (2d) 798, and cases cited therein.

It is quite plain that the Legislature by the enactment of these articles intended to prescribe a standard of taxes and penalties to be paid by corporations doing business in this State. The franchise taxes paid by corporations constitute an important item in the revenue collected by the State for the maintenance of the State government and its institutions. The penalties imposed for failure to pay franchise taxes are heavy, and were evidently incorporated in the statutes to hasten the payment of such taxes and fix a punishment for failure to pay same promptly. Ross Amigos Oil Co. v. The State, supra, and cases cited therein.

■ Unquestionably, the power to prescribe taxes and penalties rests with the Legislature, and this Court will not interfere with that authority and declare a law invalid unless the law clearly appears to violate the Constitution of the State. Texas Central R. R. Co. v. Hannay-Frerichs & Co., 104 Texas 603, 142 S. W. 1163.

■ A study of the record regarding the payment of franchise taxes by the Federal Crude Oil Company and its effort to collect from the State the amount of excess taxes claimed to have been paid will throw some light on this question. The taxes due by the Federal Crude Oil Company became delinquent in May, 1905, and on July 1, 1905, the Secretary of State forfeited its right to do business in Texas. In June of 1928 it applied for and secured a revival of its right to do business within this State from the Secretary of State, and thereupon paid its franchise taxes for twenty-four years and also penalties for the same length of time. The total amount paid to the Secretary of State by this company was $10,530.00, which is itemized as follows: Franchise taxes, $5,400.00; 25% penalty, $1,350.00; 10% penalty, $540.00; 5% revival fees, $3,240.00.

Many years after the termination of the Federal Crude Oil Co. v. Yount-Lee Oil Co. lawsuit, the Texas Legislature in May, 1941, authorized the Federal Crude Oil Company to institute suit to recover $6,986.26, alleged to have been paid in excess of the amount due on June 5, 1928, or "to determine definitely and accurately what amount of taxes, penalty and interest thereon, if any, have been heretofore illegally exacted of the Federal Crude Oil Company by the State of Texas, and paid to the State of Texas, as franchise taxes, penalty and interest thereon; * * *." By virtue of such resolution the Federal Crude Oil Company filed suit against the State for that amount of money, and alleged that the State had illegally collected that

amount of taxes and penalties from it. The trial court entered judgment for the State, and the Federal Crude Oil Company appealed the case to the Court of Civil Appeals. We quote from the opinion of the Court of Civil Appeals the following statement: "The receipt of the Secretary of State recited that appellant paid $6,986.25 under protest, 'the same being the annual franchise tax and 10% and 25% penalties for the years 1907 to 1929, contending that it is only required to pay franchise tax for the year 1906 and the penalties of 10% and 25% respectively, for said years, plus the amount of the revival fee of 5% per month for the entire period from 1906 to this date,' June 5, 1928." The Court of Civil Appeals affirmed the judgment of the trial court. See Federal Crude Oil Co. v. The State, 169 S. W. (2d) 283 (writ of error refused by Texas Supreme Court, (140 Texas 631) and certiorari denied by the United States Supreme Court, 320 U. S. 758, 759, 88 L. Ed. 452, 64 S. Ct. 66).

Thus it appears that the Secretary of State assessed the 5% penalty as provided by the statute, and same was paid in 1928 by the Federal Crude Oil Company. This Court in the case of Federal Crude Oil Co. v. Yount-Lee Oil Co., supra, while not specifically construing that part of the statute, sustained the law and permitted the company to pay that amount of penalty in order to have its charter revived. Again the question came before the courts in Federal Crude Oil Co. v. The State, supra, and the Court of Civil Appeals upheld the collection of that tax; and this Court refused an application for writ of error in that case.

It further appears that the Secretary of State on November 14, 1939, asked the Attorney General's Department for a construction of this part of Article 7092. The Honorable Gerald C. Mann, Attorney General of Texas at that time, in an opinion dated November 22, 1939, reviewed the articles of the Statutes and the construction given them by the Secretary of State and by this Court, and instructed the Secreetary of State as follows: "It is our opinion that the Secretary of State should collect a revival fee from a corporation whose right to do business has been forfeited for failure to pay its franchise tax, at the rate of 5% per month, or fractional part of a month for the entire period from the date of forfeiture until the accrued tax and penalties are paid, although payment may be made more than six months after the date of forfeiture." See Opinion No. 0-72.

The Secretary of State construed the opinion to hold that the law authorized the collection of the franchise tax and pen-

alties and an additional amount of 5% per month revival fee on the franchise tax from the date of forfeiture, and 5% per month on the tax for each subsequent year from the date of delinquency to the date of payment. This construction of the statute was questioned, on the ground that the opinion of the Attorney General's Department, No. 0-72, did not support it.

Later the Secretary of State again requested the Attorney General's Department for a construction of this provision of the statute, and asked the Attorney General the following question:

"Should a corporation whose right to do business was forfeited on September 3, 1941, for failure to pay a balance of franchise tax accruing May 1, 1941, and which corporation is willing to pay the 5% per month penalty on said balance, for which tax its right to do business was forfeited, be required to pay 5% per month revival fee on the franchise taxes accruing on May 1, 1942, May 1, 1943, and May 1, 1944, after the right to do business was forfeited on September 3, 1941?"

In answer to that question the Honorable Grover C. Sellers, the then Attorney General, in an opinion dated December 7, 1944, approved the construction given this provision of the statute by the Secretary of State, as it was supported by Opinion No. 0-72 of the Attorney General's Department. (See Opinion No. O-6264.)

■ While the Legislature has met many times since Article 7092 was construed as above indicated, it has not undertaken to change the statute so as to alter the construction which had been given it. If the Legislature did not approve the construction which had been given the statute, it could have easily amended the law. This was not done. This Court does not feel justified to hold now that the Secretary of State was in error in the construction of this statute.

The Court of Civil Appeals erred in its construction of Article 7092. The judgment of the Court of Civil Appeals is reversed, and that of the trial court is affirmed.

Smedley, Associate Justice, dissenting, without written opinion.

Opinion delivered March 3, 1948.

## ON MOTION FOR REHEARING.

MR. JUSTICE SHARP delivered the opinion of the Court.

In our original opinion we copied from the opinion of the Court of Civil Appeals the three methods of construction given Article 7092 by the Secretary of State. In this case the trial court applied method No. 3, and entered judgment accordingly. The Court of Civil Appeals held that method No. 1 was the correct construction of Article 7092, and reversed the judgment of the trial court. In our opinion we cited the cases of Federal Crude Oil Co. v. Yount-Lee Oil Co., 122 Texas 21, 52 S. W. (2d) 56, and Federal Crude Oil Co. v. The State, 169 S. W. (2d) 283 (writ of error refused by Texas Supreme Court (140 Texas 631) and certiorari denied by the United States Supreme Court, 320 U. S. 758, 88 L. Ed. 452, 64 S. Ct. 66) to show that the Secretary of State had applied method No. 2 in fixing the amount of franchise taxes due at that time. In 1934 method No. 3 was adopted by the Secretary of State, and this is the method that was applied by the trial court. As pointed out in our original opinion, this method was approved in the two opinions of the Attorney General cited in our original opinion.

With this explanation, the motion for rehearing is overruled. Opinion delivered April 14, 1948.

Second motion for rehearing overruled May 26, 1948.