The UNION TERMINAL COMPANY, a Corporation, Appellant,

v.

Al MULDROW, Secretary of State, et al., Appellees.

No. 10317.

Court of Civil Appeals of Texas.

Austin.

May 4, 1955.

Rehearing Denied May 25, 1955.

.Robertson, Jackson, Payne, Lancaster & Walker, Donald C. Fitch, Jr., Dallas, for appellant.

John Ben Shepperd, Atty. Gen., W. V. Geppert, William W. Guild, Asst. Attys. Gen., for appellees.

ARCHER, Chief Justice.

This is a franchise tax case. It involves the construction of Articles 7084 and 7094 of the Revised Civil Statutes of Texas, Vernon's Ann.Civ.St.

Article 7084(1) imposes an annual franchise tax upon corporations generally; Article 7084(2) imposes a franchise tax of only one-fifth of the general rate upon "Corporations. * * * required by law to pay annually a tax upon intangible assets" (such as railroads, bridge companies, pipelines and similar corporations); and Article 7084(3) imposes a franchise tax on all other "public utility corporations". Article 7094 exempts from payment of any franchise tax certain corporations, including

any "terminal corporation not organized for profit and having no income from the business done by it".

Appellee Muldrow's predecessor as Secretary of State required appellant The Union Terminal Company of Dallas, Texas (herein sometimes called the "Terminal"), to pay a franchise tax as an ordinary corporation under Article 7084(1). The Terminal has paid that tax under protest, claiming that (1) it is entirely exempt from the franchise tax by virtue of the terminal company exemption in Article 7094, and alternatively that (2) it is a corporation required to pay a tax upon intangible assets and therefore subject to payment of franchise tax under Article 7084(2) at one-fifth the ordinary rate, or (3) it is a public utility subject to payment of franchise tax under Article 7084(3). This suit is to recover tax paid under protest.

Appellees admit that the Terminal is a "corporation organized as a terminal corporation", within the meaning of Article 7094. However, they deny the Terminal's assertion that it is not organized for profit and has no income from business done by it, as is required for the exemption under the Article.

Appellees also deny the Terminal's alternative contentions that if it is subject to the franchise tax statutes it should have its tax computed under Article 7084(2) or Article 7084(3).

After a nonjury trial on the merits, the trial court held that the Terminal "is a corporation organized for profit and having income as these terms are used in Article 7094" that it is neither a corporation required to pay tax on intangibles nor a public utility corporation, and rendered judgment for the defendant-appellees.

The appeal is before this Court on four points, and are:

"1. The Trial Court erred in finding that the Terminal is organized for profit and has income as those terms are used in R.C.S., Article 7094.

"2. The Trial Court erred in holding that the Terminal was not exempt from franchise taxation under R.C.S., Article 7094.

"3. The Trial Court erred in failing to hold that if the Terminal is not exempt under R.C.S., Article 7094, it is taxable for franchise tax purposes as a corporation 'required by law to pay annually a tax upon intangible assets' under R.C.S., Article 7084(2).

"4. The Trial Court erred in failing to hold that if the Terminal is neither exempt under R.C.S., Article 7094 nor taxable under R.C.S., Article 7084(2), it is taxable for franchise tax purposes as a 'public utility' under R.C.S., Article 7084(3)."

The appellees contend that the Terminal is organized for profit and has an income and is liable for the tax and not liable under Clause (2) of the franchise tax since it is not required to pay the annual intangible tax, and is not a public utility within the meaning of Clause (3).

Union Terminal was organized under Section 53 of Article 642, Revised Statutes of 1895, and recited in its charter that it is formed "for the purpose of construction, maintenance and operation of a terminal railway," by eight owner lines and obtained a large loan with which to start its operation. The eight owner lines pledged their stock in the terminal company to secure the loan, and an agreement was executed to provide for the retirement of the funded indebtedness at approximately $25,000 annually. The operation expenses of the Terminal amounts to about one and one half million dollars annually, and an annual income of $100,000, together with some other income from the sale of three parcels of land and a premium gained in refinancing bonded indebtedness in 1937. These profits were taken into account and credited to the owner lines on a pro rata basis.

We believe that the trial court was justified in finding as a fact that Union Terminal was organized for profit and has an income, and is precluded from coming

within the exemption of Article 7094, which in part reads:

"The franchise tax imposed by this Chapter shall not apply * * * to any corporation organized as a terminal corporation not organized for profit and having no income from the business done by it * * *."

We believe that the case of Houston Belt & Terminal Railway Co. v. Clark, Tex.Civ.App., 122 S.W.2d 356, affirmed 135 Tex. 338, 143 S.W.2d 373, is controlling in this case.

The two cases are similar in organization and operation.

Appellant contends that the Terminal Company could not have had an income since its operating expenses exceeded greatly its income, and was organized to provide a convenient facility for its carrier owners, with no view of making profit, and that it had not made a profit and could not reasonably anticipate making a profit from its operations.

The Court, in the Houston Belt Case, discussed the meaning and definition of the term "income" and no useful purpose could be had by restating such holdings here, but we refer to the same.

 We believe that the trial court was correct in holding that the Union Terminal was not exempt from franchise taxation under Clause (2) of Article 7084, which reads in part:

"Corporations, other than those enjoying the use of public highways by virtue of a certificate of public convenience and necessity granted by the Railroad Commission of Texas, which are required by law to pay annually a tax upon intangible assets, and corporations owning or operating street railways or passenger bus systems in any city or town and suburbs thereof, and corporations organized to and maintaining or owning or operating electric interurban railways, shall be required to hereafter pay a franchise tax equal to one-fifth (⅕) of the franchise tax herein imposed against all other corporations under Section (1) herein."

Article 7105, Vernon's Texas Civil Statutes, provides:

"Each incorporated railroad company, ferry company, bridge company, turnpike, or toll company, oil pipe line company, and all common carrier pipe line companies of every character whatsoever, engaged in the transportation of oil, and in addition each 'motor bus company,' as defined in Chapter 270, Acts, Regular Session of the Fortieth Legislature, as amended by the Acts of 1929, First Called Session of the Forty-first Legislature, Chapter 78, and each 'common carrier motor carrier' operating under certificates of convenience and necessity issued by the Railroad Commission of Texas, doing business wholly or in part within this State, whether incorporated under the laws of this State, or of any other State, territory, or foreign country, and every other individual, company, corporation, or association doing business of the same character in this State, in addition to the ad valorem taxes on tangible properties which are or may be imposed upon them respectively, by law, shall pay an annual tax to the State, * * *."

We do not believe that appellant is a railroad corporation and required to pay the franchise tax under Clause (2) as an intangible taxpayer, and has not been required by the State to pay intangible taxes, nor has appellant filed an intangible tax report within the last twenty years. Some years ago appellant did file a number of such reports but has not paid an intangible tax. Appellant is a typical Terminal Company, incorporated and operating as such, and is not a railroad corporation. There has been a departmental construction extending over a long period of time to the effect that appellant is not an intangible taxpayer, and such departmental construction is entitled to great weight. Isbell

v. Gulf Union Oil Co., 147 Tex. 6, 209 S.W.2d 762.

Appellant Union Terminal is not a public utility within the meaning of Clause (3) of the franchise tax and has not been so defined by the Legislature. Carney v. Southwestern Motor Transport, Inc., Tex., 267 S.W.2d 802.

The judgment of the trial court is affirmed.

Affirmed.