

# THE ATTORNEY GENERAL

# OF TEXAS

### AUSTIN 11, TEXAS

**WILL WILSON**
**ATTORNEY GENERAL**

September 13, 1957

Honorable Zollie Steakley
Secretary of State of Texas
Austin, Texas

Opinion No. WW-227

Re: Can the Secretary of
State, under Art. 9.14 C
(3) of the Texas Business
Corporation Act, demand
of a trustee of a corp-
oration which is in pro-
cess of reorganization
under Ch. X of the Feder-
al Bankruptcy Act the sum
of money required under
Art. 7092 V.C.S. to re-
vive the right to do
business in Texas, where
petition for such reor-
ganization was filed in
the Federal Court prior
to the date upon which
such right to do business
was required to be for-
feited under Art. 7091,
V.C.S.

Dear Mr. Steakley:

In your recent letter you request our opinion based
upon the facts you state and which are hereinafter recited,
on the following question:

"Was the Secretary of State authorized to
require the payment of the penalty of $473.85
and the revival fee of $2,132.33 from this
corporation under the above facts, or on the
other hand, is the corporation entitled to a
refund of either or both sums so paid to the
Secretary of State?"

The corporation in question is Texas City Chemicals,
Inc. You recite the following fact situation:

"The captioned corporation, properly
chartered by the State of Texas, failed to
pay its franchise taxes in the amount of
$4,738.50 which was due on May 1, 1956. On
June 22, 1956, a petition for reorganiza-
tion of the corporation under Chapter X

of the Bankruptcy Act was filed in the Federal District Court and subsequently approved with a trustee being duly appointed.

"On July 2, 1956, during the pendency of reorganization proceedings, the Secretary of State, in conformity with the provisions of Article 7091, R.C.S., as amended, forfeited the corporation's right to do business in this State.

"The State of Texas on October 18, 1956, filed in the reorganization proceedings its claim against the corporation for delinquent franchise tax of $4,738.50, plus the penalty of 10% amounting to $473.85, as provided in Article 7091, R.C.S., as amended.  On January 3, 1957, after due notice and hearing on Trustee's objections to the allowance of a 10% penalty, the federal district judge ordered only the franchise tax of $4,738.50 to be allowed as the claim of the State of Texas and specifically denied any right to the penalty of $473.85.  No appeal was taken.

"Under a plan of reorganization of the corporation application for adoption of the Texas Business Corporation Act (as a prelude to charter amendments under this act) was filed with the Secretary of State on March 22, 1957.  Because of the provisions of Article 9.14C(3), Texas Business Corporation Act, this office refused to file the adoption unless a total amount of $7,344.68, (being delinquent franchise taxes of $4,783.50, plus 10% penalty thereon of $473.85, plus an additional amount for revival fee under Article 7092, R.C.S., as amended, of $2,132.33) was first paid.  Upon oral and informal protest this office agreed to place $2,606.18 of the total amount (the penalty of 10% in the sum of $473.85 and the revival fee of $2,132.23) in a departmental suspense account pending determination of the proper amount, in excess of the undisputed sum of $4,783.50, due the State of Texas."

In addition, you have advised us that the notice of delinquency required by Articles 7092 and 7091, V.C.S.

to be mailed by the Secretary of State to each corporation which failed to pay its franchise tax on or before May 1 was mailed on May 31, 1956.

For convenience we have considered the laws of the United States which bear upon this inquiry in Section I of this opinion, and the laws of Texas upon the subject in Section II.

I.

We hold that the corporation and the trustee are liable for the revival fee and the penalty for late payment of the franchise tax under the laws of the United States as a charge to remove forfeiture of the corporate right to do business which was allowed to be incurred subsequent to attachment of jurisdiction of the Bankruptcy Court.

We consider the case of Boteler v. Ingels, 308 U.S. 57 (1939) as determinative of this position. We would prefer to quote that entire opinion - it is unusually concise and precise in support of our position - but in deference to brevity urge that it be read and considered very carefully. The Act of Congress of June 18, 1934, 48 Stat. at L. 993, Ch. 585, 28 U.S.C.A. Sec. 124a therein quoted is now encompassed within the provisions of 28 U.S.C. Secs. 959(b) and 960. Changes in wording of this Act have not altered the force nor restricted the scope of application of this decision.

See also the following sections of the Bankruptcy Act of 1938: 11 U.S.C. Ch. 7, Sec. 102 (a), being Sec. 62 (a) of the Act; 11 U.S.C. Ch. 10, Sec. 616 (3), being Sec. 216 (3) of the Act; and 11 U.S.C. Ch. 6, Sec. 93(j), being Sec. 57 (j) of the Act; In re Chicago & N. W. Ry. Co. Thomson v. Toman, 119 F. 2d 971 (C.C.C. 7th 1941); Collier on Bankruptcy, 14th Ed., Vol. 6 Par. 13.03 (1), p. 4513-4, with reference to Sec. 62 (a) of the Bankruptcy Act. (See Appendix for copy of Federal Statutes cited in this opinion).

Right on the part of the corporation of preventing the forfeiture existed continually and with no qualifications from the date of filing of the petition in reorganization on June 22 until the right to do business was forfeited by the Secretary of State on July 2, 1956.

Under Article 7092, V.C.S. (first sentence) and Article 7091, V.C.S. (second sentence) the Secretary of State could not have forfeited the corporate right to do business until 30 days after mailing of the notice re-

quired by these Articles.  This officer advises us that he mailed this notice on May 31, 1956.  Therefore, the forfeiture could not have been made until 30 days after May 31, 1956, which was after June 22, 1956.

When it was made on July 2, there accrued and became due to the State in order to restore to the corporation its right to do business the sum of money to be ascertained as provided in that portion of Article 7092 hereinabove mentioned.  This sum is plainly stated by that Article to be the consideration necessary to move to the State, not in discharge of the penalty for late payment of the franchise tax, but in payment for a new and wholly different and very valuable favor from the State, i.e. restoration of the corporate right to do business, and release of the State's right to forfeit the charter. (Articles 7092, 7096).

Furthermore, this sum upon its accrual also became secured by a lien, under Article 7090, V.C.S: "The state shall have a prior lien on all corporate property for all franchise taxes and penalties. . ."

Had the Legislature fixed a flat fee for revival, without reference to the late payment penalty, it would be clear that such sum would be due without question. Even if the late payment penalty is considered as a part of the cost to remove the forfeiture such component still did not accrue until after the bankruptcy proceedings were initiated.

With reference to application of the foregoing authorities we believe the corporation and Trustee owe both the penalty and revival fee on the basis of such sums being necessary costs in administering and preserving the corporate estate under Sections 62 (a) and 216 (3) of the Bankruptcy Act, and under 28 U.S.C. Sections 959(b) and 960 in order to comply with the laws of Texas in the management, conduct and operation of the corporation while under the jurisdiction of the bankruptcy court.

In Palmer v. Webster & Atlas National Bank of Boston, 312 U. S. 156 (1940), at page 163 the Court expressed the purpose of the Act of June 18, 1934, Chap. 585, 48 Stat. at L. 993, 28 USCA Sec. 124 (a) as:

"The purpose of this bill is to subject businesses conducted under receivership in Federal courts to State and local taxa-

tion the same as if such businesses
were conducted by private individuals
or corporations. . .What Congress in-
tended was that a business in receiver-
ship, or conducted under court order
should be subject to the same tax liabi-
lity as the owner would have been if in
possession and operating the enterprise."

Complete jurisdiction of the bankruptcy court over
all property and affairs of the corporation attached on
June 22, 1956, the date on which petition in reorganization
was filed in the United States District Court in Galveston.
11 U.S.C. Chap. 10, Secs. 511 and 512 (being Secs. 111 and
112 of the Bankruptcy Act of 1938); Matter of Cuyahoga
Finance Company, 136 F. 2d 18 (C.C.A. 6th, 1943); Collier
on Bankruptcy, 14th Ed., Vol. 6, p. 573-4.

If the corporation doubted its liability for either
the tax or penalty or any part of either, under 11 U.S.C.
Ch. 6, Sec. 93 (j), being Sec. 57 (j) of the Bankruptcy
Act of 1938, or under any other law, it had a plain com-
plete and timely mode of protection under both Article
4388 and 7057b, V.C.S. to prevent forfeiture of its
right to do business. Isbell v. Gulf Union Oil Co., 147
Tex. 6, 209 S.W. 2d 762 (Tex. Sup. 1948); Muldrow, Secre-
tary of State v. Texas Frozen Foods, Inc., 299 S.W. 2d
275 (Tex. Sup. 1957).

In any event the trustee legally could have pre-
vented the forfeiture of the right to do business and con-
sequent penalty for revival of such right, and was legally
bound to have done so.

While the penalty, considered as a penalty for late
payment, may have been barred under Section 57 (j) of the
Bankruptcy Act it accrued and became due as an incident
to preserving and protecting the estate of the bankrupt
during administration by the bankrupt court, under 28 U.
S.C. Secs. 959 (b) and 960, and under 11 U.S.C. Secs.
102 (a) and 616 (3).

Not only was the corporate business being conducted
through the Bankruptcy Court in a proceeding in reorgani-
zation under Chapter X of the Bankruptcy Act, on July 2,
1956, but such proceedings continued through March 22,
1957 when the application to adopt the Texas Business
Corporation Act was filed. The creditors as well as the
stock holders were entitled and required to be protected

by the preservation of this valuable right to do business in the corporation.

Reorganization has for its main purpose the rehabilitation of the debtor, and to that end contemplates the continued corporate existence of the debtor. Forfeiture of franchises or accrual of penalties for non-payment of the tax would be serious barriers to such rehabilitation. Thompson v. State of Louisiana, 98 F. 2d 108, (C. C.A. 8th, 1938); Mayer v. Gros, 116 F. 2d 737 (C.C.A. 5th, 1940); McFarland v. Hurley, 286 Fed. 365 (C.C.A. 5th, 1923); In re Fonda, J. & G.R. Co, Zimmer v. New York State Tax Comm., 126 F. 2d 604 (C.C.A. 2d, 1942, Cert. Den. 316 U. S. 701); In re International Power Securities Corp., 109 F. Supp. 544 (3d D. New Jersey, 1953); Collier on Bankruptcy, 14th Ed. Vol. 3, p. 1515-1519.

The franchise taxes, penalties and forfeitures of the State of Texas are non-discriminatory as to corporations in receivership, in the hands of a trustee, or under jurisdiction of a Federal bankruptcy court. Ross Amigos Oil Co., v. State, 138 Tex. 626, 138 S.W. 2d 798 (Tex. Sup. 1940) citing In re Detroit Properties Corp., 254 Mich. 523, 236 N.W. 850 (Mich. Sup. 1931); State v. Dyer, 145 Tex. 586, 200 S.W. 2d 813 (Tex. Sup. 1947); Federal Crude Oil Co. v. State, 169 S.W. 2d 283 (Civ. App. 1943; Cert. Den. 320 U.S. 758).

In Michigan v. Michigan Trust Co., 286 U.S. 334 (1931) the Court recognized that under franchise tax statutes similar to those of Texas the corporate franchise might be forfeited by the state for failure of a Receiver appointed by a Federal court and managing the corporate business to pay the corporation franchise taxes when due.

Forfeiture of the corporation's right to do business was mandatory upon the Secretary of State under Article 7091 V.C.S., Tex. Const. Art. I, Sec. 28. Immediately upon such forfeiture there accrued and became due and payable the composite sum of money necessary to restore this right to do business, as required by Article 7092 V.C.S., as follows:

> "Any corporation whose right to do business may have been forfeited, as provided in this Chapter, shall be relieved from such forfeiture by paying to the Secretary of State at any time prior to the forfeiture of the charter or permit of such corporation as hereinafter

provided, the full amount of the fran-
chise taxes and penalties due by it, to-
gether with an additional amount of five
per cent (5%) of such taxes for each
month, or fractional part of a month,
which shall elapse after such forfeiture
as a revival fee; provided, that such
amount shall in no case be less than Five
Dollars ($5).  When such taxes and penal-
ties and the revival fee shall be paid to
the Secretary of State, he shall revive
the right of the corporation to do business
with the State. . . ."

We have found only one case which at first glance
might appear to make an intrusion upon the foregoing
authorities.  That is California State Board of Equaliza-
tion v. Goggin, In re Exeter Refining Co., 183 F. 2d 489
(C.C.A. 9th, 1950, cert. den. 340 U.S. 891) (herein re-
ferred to as the Exeter Case).  However, this case does
not lessen the force nor the scope of application of
Boteler v. Ingels (Supra) nor other authorities herein-
above cited to the facts stated in the request for this
opinion.

The Exeter Case is subject to several material
distinctions from the situation under which the Trustee
of Texas City Chemicals, Inc., paid to the Secretary of
State of Texas the sums of money in question (herein
referred to as the Texas Case).

1) In the Exeter Case the tax had become
due prior to the inception of the bank-
ruptcy proceedings.  In the Texas case
both the incident of forfeiture as well
as the sum of money in question necessary
to revive the right of the corporation to
do business accrued and became fixed after
the bankruptcy petition was filed.

2) Only payment of a tax and penalty, with-
out a lien therefor being asserted, was in-
volved in the Exeter case.  Preservation and
protection of the corporate estate against
loss of a very valuable right: i. e. its
right to do business in Texas, is material
in the Texas Case.

3)Exeter withheld from the sovereign a
simple tax claim.  In the Texas Case
the corporation would ask, first, that
the State withhold exercising its sovereign
duty of forfeiture, contrary to its Consti-
tution, and second, that if the State be
allowed to exercise this sovereign function,
then that the corporation be allowed to ex-
tract from the sovereign a gratituity in
the nature of a removal of such forfeiture.

4) The Texas corporation could have paid
the tax and penalty under either Article
4388 or Article 7057b, V.C.S. and pre-
vented forfeiture.  No mode of preventing
the penalty sought in the Exeter case is
mentioned in that case.

5) Exeter paid the tax with legal interest;
the Texas corporation tendered no tax nor
any other sum prior to and in prevention
of forfeiture.

## II.

We further hold that the corporation was required
to pay both the late payment penalty and the revival fee
incident to the accrued franchise taxes under the Texas
Business Corporation Act, Art. 9.14 C (3), which directs
the Secretary of State to file a corporate resolution
adopting the Act, ". . .when all fees and franchise taxes
have been paid as prescribed by law." (underscoring added)

The amount demanded by the Secretary of State was
paid by the Trustee for the corporation under Article 4388,
V.C.S.  This amount at the option of the Trustee also
could have been paid under Article 7057b, V.C.S.

The Trustee contends that neither the late payment
penalty nor the revival fee are comprehended within the scope
of the phrase ". . .all fees and franchise taxes. . ."
as used in the above Art. 9.14 C (3) of the Texas Business
Corporation Act.  Although we find no decisions of our
courts which have construed Article 4388 and which apply
to this contention we believe there are applicable the
several cases hereinafter cited in which our Supreme Court
has considered penalties and fee incident to franchise
taxes paid under protest under Article 7057b.  It is
our opinion that the Legislature intended the terms ". . .
all fees and franchise taxes. . ." as used in this Art.

9.14 C (3) to include the late payment penalty and revival fee which were due and paid by the Trustee.

Article 7057b in Sec. 1 states it is applicable to:

". . .any occupation, gross receipt, fran- chise, license or other privilege tax or fee . . ." paid "to the head of any department of the State Government. . .", and authorizes suit for recovery ". . . of such taxes or fees. . ." (Underscoring added).

Sec. 7 of this Article 7057b reads:

"The provisions of this law shall be cumula- tive of all laws relating to the payments of taxes or fees of undetermined status and for the holding thereof in the suspense ac- count fund of the State Treasurer".

We are aware of the holding in the case of Jones v. Williams, 121 Tex. 94, 45 S.W. 2d 130 (Tex. Sup. 1931), cited by the Trustee in its brief submitted in connection with this opinion request, wherein the Court at page 133 said:

". . .the impositions made for delinquency . . . for failure to pay taxes, whether the impositions are denominated 'penalties', 'interest', 'forfeitures', or whether pre- scribed without definition or name are all in reality penalties imposed for delinquency or failure of duty, and all enated in aid of the state's revenue. . ."

The Court then categorically held that such "pen- alties" are distinct from and not a part of the tax to which such impositions are incident.

Adverting again to Article 7057b and to the case of Blackmon, Tax Assessor-Collector of Jefferson County v. Hansen, 140 Tex. 536, 169 S.W. 2d 962 (Tex. Sup. 1943) wherein the Court gave a broad and liberal interpretation to the wording of that statute, at page 964 the court said:

"We think Article 7057b, supra, and related statutes, should be liberally construed, to the end that an adequate remedy be accorded those who are required to pay illigal taxes". (underscoring added).

It seems to be settled by decisions of our Texas Supreme Court that the terms "taxes or fees" used in this Article 7057b comprehend all penalties which may arise incident to the Texas franchise tax. Isbell v. Gulf Union Oil Co., 147 Tex. 6, 209 S.W. 2d 762 (Tex. Sup. 1948); Fulgham, Sec. of State v. Gulf, C. & S. F. Ry Co., 288 S. W. 2d 811, (Civ. App. 1956, error ref. n.r.e.); Muldrow, Sec. of State v. Texas Frozen Foods, Inc., 299 S.W. 2d 275 (Tex. Sup. 1957).

Based upon these decisions it appears to us that Art. 9.14 C (3) of the Texas Business Corporation Act requires a corporation, delinquent in any franchise tax, penalty or fee incident to the franchise tax, to pay all these charges before the State will recognize an adoption of the Act in any respect.

Under Article 7092, V.C.S. there is assessed against a corporation as one component of ". . . the amount necessary to entitle it to have its right to do business revived. . ." a sum denominated a "revival fee". The word "fee" is likewise used in both Article 7057b and in Sec. 9.14 C (3) of the Corporation Act under consideration. Whether the composite sum necessary to revive the right to do business, including each and all its components, is denominated a "tax", "penalty" or "fee", we believe that both the Legislature and our State Supreme Court have made it clear that under our franchise tax laws the intent of the Legislature is that these laws be liberally construed as revenue measures, and that the terms mentioned will not be restricted to their otherwise possible fine distinctions.

We believe that the language and effect of the decision of the Texas Supreme Court in the case of Federal-Crude Oil Co. v. Yount-Lee Oil Co., 122 Tex. 21, 52 S.W. 2d 56 (Tex. Sup. 1932) there applied to Article 7091, V. C.S. is just as applicable to other articles pertaining to payment and collection of the state's franchise taxes, wherein at page 61 the Court said:

"This statute is purely a revenue measure. Under it large sums are collected for the support of the state government. Statutes of this nature are always liberally construed so as to effectuate the chief object and purpose of their enactment".

And in the same paragraph the Court continued:

"The primary purpose of such a statute
is to secure the payment of the taxes
therein levied."

The Legislature has lumped together "all franchise
taxes and penalties" (Art. 7090, V.C.S.) and "any fran-
chise tax or franchise taxes or penalty or penalties" (Art.
7095, V.C.S.) as being secured by lien on all corporate
property and as being obligations for which a corporation
charter may be forfeited.

We believe the purpose and effect of the provisions
of Art. 9.14, Sec. C(3) of the Texas Business Corporation
Act should be likewise construed to require a corporation
delinquent in any franchise tax or any penalty or fee in-
cident to that tax to pay all this delinquency before the
State will file an amendment to the corporate charter under
which the corporation adopts any new provision of that Act
and receives any of its benefits.   The Legislature by con-
ditioning the privilege of adoption of the Act upon pay-
ment of ". . . all fees and franchise taxes. . . as pre-
scribed by law. . ." intended to and did add an additional
means of enforced payment of all such delinquencies.

"And where the legislative purpose and
intent can be fairly and reasonably de-
duced from the language of the statute,
when taken as a whole, such purpose and
intent should be effectuated."   Thompson
v. Missouri, K. & T Ry. Co., 103 Tex. 372,
126 S.W. 257, (128 S.W. 109, rehearing de-
nied, Tex. Sup. 1910).

All of the above authorities and our views are in
complete harmony with the long settled principle that for
purposes of payment all interest and penalties incident
to a tax become inseparably merged with the tax itself
so that the composite sum must be paid in whole.   Except
for the special act relating to ad valorem taxes which
was construed in the case of Jones v. Williams, supra,
there is no other provision in our state tax structure
wherein a delinquent tax payer is allowed to pay an ex-
isting legally delinquent tax without at the same time
also paying the penalties and other components which have
become a part of the delinquency.   Richey, Tax Collector
v. Moor, 112 Tex. 493, 249 S.W. 172 (Tex. Sup. 923); Lufkin
Land and Lumber Co. v. Noble, 127 S.W. 1093 (Tex. Civ. App.,
1910).

The prior refusal of the bankruptcy court to allow the penalty for late payment  as a penalty does not effect the liability of the corporation and the Trustee for such sum as a part of the expense incident to administering the estate upon subsequent adoption by the corporation of the Texas Business Corporation Act.  Where the corporation invokes the benefits of the Act it must pay the cost set by the Legislature for that privilege.

### S U M M A R Y

Where the right of the State to forfeit a corporation's right to do business in Texas accrued after a petition for reorganization of the corporation under Chap. X of the Federal Bankruptcy Act has been filed the sum of money necessary to revive the right to do business is payable by the Trustee in Bankruptcy under the bankruptcy laws as an expense of preserving and administering the corporate estate, and is properly demanded by the Secretary of State upon the corporation filing its resolution adopting the Texas Business Corporation Act under Article 9.14 C(3) of that Act.

Very truly yours

WILL WILSON
Attorney General of Texas

By W. E. Allen
W. E. Allen
Assistant

WEA/fb

APPROVED:

OPINION COMMITTEE

George P. Blackburn, Chairman

W. V. Geppert


REVIEWED FOR THE ATTORNEY GENERAL

By: James N. Ludlum