M. H. McDonnell and Opal McDonnell v. Commissioner.
McDonnell v. Commissioner
Docket Nos. 5188-63, 754-64.
United States Tax Court
T.C. Memo 1965-125; 1965 Tax Ct. Memo LEXIS 204; 24 T.C.M. (CCH) 647; T.C.M. (RIA) 65125; May 11, 1965
Jimmie C. Dixon and George J. Petrovich, Jr., Rowan Bldg., Ft. Worth, Tex., for the petitioners. Williard A. Herbert, for the respondent. TRAIN
Memorandum Findings of Fact and Opinion TRAIN, Judge: The respondent determined deficiencies in these consolidated proceedings for the years 1960, 1961, and 1962 in the respective amounts of $6,319.07, $6,524.37, and $3,035.72. The sole issue for decision is whether the petitioners may deduct on their individual income tax returns for the years 1960-1962, inclusive, losses incurred by their ninety-nine-percent-owned corporation. Findings of Fact Some of the facts *205 have been stipulated and are hereby found as stipulated. Petitioners M. H. McDonnell and Opal McDonnell are husband and wife residing at Fort Worth, Texas. They filed joint income tax returns for each of the calendar years 1960, 1961, and 1962 with the district director of internal revenue at Dallas, Texas. Lone Star Stone & Block, Inc., (hereinafter referred to as Lone Star) was organized under the laws of the State of Texas on October 16, 1958. Lone Star's fiscal year ends on October 31 of each year. Petitioners were the president and secretary-treasurer, respectively, of Lone Star. They owned together 99 shares of Lone Star's stock and J. R. Moore owned the only other share. Lone Star did not pay its franchise taxes to the State of Texas for the years 1959 to 1963, inclusive. The Secretary of State of the State of Texas advised Lone Star that by its failure to pay its franchise taxes it had forfeited its right to do business as of July 16, 1960. As a consequence of Lone Star's failure to pay its franchise taxes for the years 1958 to 1960, inclusive, the State of Texas, by its comptroller of accounts, filed a Notice of Franchise Tax Lien against Lone Star on January 27, 1961. *206 The Attorney General of the State of Texas in 1963 brought suit in behalf of the State of Texas against Lone Star seeking a judgment for all franchise taxes, penalties, and interest due from Lone Star for the years 1959 to 1963, inclusive. The petition requested the court to revoke Lone Star's charter. On March 24, 1964, the Texas court entered a default judgment against Lone Star. The judgment ordered Lone Star to pay all franchise taxes, penalties, and interest due for the years 1959 to 1963, inclusive; and also ordered the revocation of its charter. Lone Star had begun business in 1958 with a deficit cash balance of $2,827.77. The company was constantly in financial difficulty during its first two years of operation. M. H. McDonnell, hereinafter referred to as petitioner, got working capital for Lone Star by obtaining loans or guaranteeing loans made to Lone Star. The company received a loan in the amount of $115.00 from the Small Business Administration in early 1961 on the basis of an application Lone Star had made in the summer of 1960. William A. Sewell, Jr., a certified public accountant, kept the books and records and prepared and filed the tax returns for Lone Star. *207 He also prepared and filed the individual tax returns for petitioners. Beginning with November 1, 1960, and thereafter, petitioners claimed the losses of Lone Star on their individual joint income tax returns. The stockholders of Lone Star never took any formal action with the appropriate officials of the State of Texas to terminate Lone Star's corporate entity. Returns filed with the Internal Revenue Service for 1960 did not indicate that Lone Star was filing its final returns. In 1962, a revenue agent audited Lone Star's tax return filed for its fiscal year ended October 31, 1960. The agent then learned for the first time that Lone Star had not filed any subsequent tax returns. He also learned then that the losses incurred by Lone Star subsequent to October 31, 1960, had been reported on petitioners' individual income tax returns. During the years involved, Lone Star continued to use trucks (as many as four) bearing the name "Lone Star Stone & Block, Inc.," on their sides. Likewise, the persons working in petitioners' office continued to use stationery and invoices bearing the same name. As late as 1963, the name "Lone Star Stone & Block, Inc.," appeared in the Fort Worth, *208 Texas, telephone directory in both the white and yellow pages. Chattel mortgages on file in the office of the Clerk of the County Court of Tarrant County, Texas, were executed by Lone Star subsequent to the year 1960, the latest one on September 20, 1963. In his deficiency notices, respondent disallowed deductions claimed by the petitioners in respect to net operating losses of Lone Star on the basis that such losses were not those of petitioners but the corporate losses of Lone Star, "a separate taxable entity." Lone Star existed as a separate taxable legal entity until its corporate charter was revoked on March 24, 1964, by order of a Texas state court. Losses sustained by Lone Star Stone & Block, Inc., in the amounts of $23,076.47, $19,582.52, and $54,716.05 are not deductible by petitioners on their returns for 1960, 1961, and 1962, respectively. Opinion The petitioners claim that, in reality, Lone Star ceased to do business as a corporation on and after November 1, 1960, and that the business should be treated for tax purposes as a sole proprietorship (or partnership) after that date. Alternatively, the petitioners ask, in the event we find the corporate entity had in *209 fact continued, that the stockholders be treated as having filed an election as a small business corporation under section 1372(c) of the Internal Revenue Code of 1954. We find no merit in either position. A corporation's status, de facto or de jure, is determined by state law when the corporation fails to comply with certain state statutory conditions which affect its right to do business. Langdon L. Skarda, 27 T.C. 137 (1956), affd. 250 F. 2d 429 (C.A. 10, 1957). In Isbell v. Gulf Union Oil Co., 209 S.W. 2d 762, (Tex. 1948), the Supreme Court of Texas held that the failure of a Texas corporation to pay its franchise tax merely prevents it from suing or defending in the Texas State courts. In all other respects, the corporation continues to have the right to do business under its charter. From the foregoing it is apparent that the failure of Lone Star to pay its franchise taxes for the years 1958 to 1963, inclusive, did not affect its corporate entity. It continued to exist as a separate taxable corporate entity until at least March 24, 1964, when the Texas court ordered its charter revoked. This necessarily means *210 that losses incurred by Lone Star prior to the revocation of its charter cannot be utilized by anyone else. Consequently, petitioners are not entitled to deduct losses of "Lone Star" on their individual income tax returns for 1960, 1961, and 1962. Petitioners argue that Lone Star became a sole proprietorship by some method of dissolution which was intended to accomplish that result. They admit that under Texas law such a result cannot be accomplished merely by the nonpayment of corporate franchise taxes. They fail to demonstrate how the alleged dissolution was accomplished except to suggest that all the assets and liabilities of Lone Star were somehow transferred to a proprietorship. It has long been the law that a corporation carrying on a business (or a business activity) such as that of Lone Star is a separate taxable entity unless it can be shown to be a sham or unreal. Moline Properties v. Commissioner, 319 U.S. 436 (1943). Petitioners do not allege in the petitions that Lone Star was a sham or unreal and those matters are not in issue in this case. North American Coal Corporation, 28 B.T.A. 807 (1933), at p. 831. Even if they were, there is no evidence *211 that would support such a contention. Petitioners admit that a valid legal corporation existed prior to the years in question and offer no grounds for determining that Lone Star ceased to exist as a legal corporation. The methods and procedures of dissolution of a Texas corporation are set forth in Articles 6.01 through 6.12 and 7.01 of the Business Corporation Act (Volume 3A) and Article 12.17 of Taxation General (Volume 20A) of Vernon's Ann. Tex. Statutes. Two methods are provided: Voluntary and Involuntary dissolutions. A voluntary dissolution of a corporation which has been engaged in the active conduct of a business can only be carried out by first obtaining the written consent of each of its shareholders agreeing to dissolve the corporation, the corporate officers filing a statement of intent to dissolve the corporation with the Secretary of State, and the issuance by the latter official of a certificate of dissolution. Articles 6.01 through 6.12, supra. An involuntary dissolution pertains to an order of a court rendering a judgment of forfeiture on the basis of the corporation's failure to file annual reports, or to pay certain fees and taxes. Article 7.01, supra. The date *212 of the judgment of the court is the date on which the charter of the corporation is revoked by the Secretary of State of Texas. Article 12.17, supra. The evidence of record in this case contains no showing that the shareholders of Lone Star executed consents to dissolve Lone Star, or that the officers filed a notice of intent to dissolve, as required by the aforementioned statutory section. Thus, as a matter of law, the corporate entity existed at least until the court order of March 24, 1964, ordering the revocation of Lone Star's charter. The certified public accountant who kept the books and records of Lone Star testified that he "closed" the books of the company after he had prepared and filed its return for the 1960 fiscal year on January 12, 1961. Be that as it may, he did not indicate on the return that it was final in nature, nor did he supply the information required by section 6043, 1954 Code, and regulations thereunder, applicable under the circumstances. From these facts, together with the evidence of continued use of the corporate name, we conclude that Lone Star continued to conduct its affairs as a corporate entity. Petitioners' citation of Knoxville Truck Sales & Service, Inc., 10 T.C. 616 (1948) *213 is not in point since in that case the corporation was wholly owned by a single shareholder and the corporate charters had actually been revoked by state law. In the instant case there are three stockholders, evidence of continuing corporate activity, and a failure to voluntarily dissolve the corporation in accordance with state law. Finally, petitioners argue that Lone Star substantially complied with the provisions of section 1372, Internal Revenue Code of 1954, electing to be taxed as a small business corporation, even though an election on Form 2553 and the written consents of the stockholders were not filed as required by the regulations. Section 1.1372-2, 3, Income Tax Regs. A similar situation was presented to the Court in William Pestcoe, 40 T.C. 195 (1963), where the taxpayers did file a Form 2553 and the consents of the stockholders, but the filing was not timely. The Court ruled that the statute expressly empowers the Secretary or his delegate to prescribe by regulations the manner of making the election, and if the election is not made in accordance with the regulations, then the benefits of the statute are unavailable to the taxpayers. *214 Accordingly, the Court ruled that failure to timely file a Form 2553 and the written consents of the stockholders, as required by the regulations, precluded the stockholders from claiming the corporation loss on their personal income tax return. Here, where there has been a failure to comply in any respect, the benefits of the statute must be denied to petitioners. Because of other adjustments, Decisions will be entered under Rule 50.